**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0223. FUCIARELLI v. MCKINNEY et al.                    JE-011

ELLINGTON, Presiding Judge.

The Superior Court of Fulton County dismissed claims brought by Alfred Fuciarelli under the Georgia Taxpayer Protection and False Claims Act ("the TPFCA"), OCGA § 23-3-120 *et seq*., on the ground that Fuciarelli lacked the required written approval of the Attorney General of the State of Georgia prior to bringing the claims, citing OCGA § 23-3-122 (b) (1). Pursuant to a granted application for interlocutory appeal, Fuciarelli argues that the trial court erred in finding that his claims required the Attorney General's approval. For the reasons that follow, we affirm the judgment in part and reverse in part.

"We review a trial court's ruling on a motion to dismiss de novo, viewing all allegations in the complaint as true. Thus, we owe no deference to a trial court's

ruling on questions of law and review such issues de novo under the 'plain legal error' standard of review." (Citations and punctuation omitted.) *Laskar v. Bd. of Regents of the Univ. Sys. of Ga.*, 320 Ga. App. 414 (740 SE2d 179) (2013). So viewed, the relevant facts are as follows.

Fuciarelli is employed by the Board of Regents of the University System of Georgia as a tenured faculty member at Valdosta State University ("VSU"). As he admits in his brief, he is a public employee. He served as an assistant vice president for research and as dean of the graduate school. In his roles as vice president and dean, Fuciarelli recommended that VSU implement an electronic research administration system to better manage its grants and research programs and their funding sources. Although VSU initially approved the system, it removed Fuciarelli as the system's budget manager and it later declined to fund the system. Fuciarelli complained to the administration about VSU's "noncompliance with laws, rules, and regulations," he expressed concerns that VSU's lack of research administration tools exposed VSU to liability, and he complained about his exclusion from certain internal audits. Ultimately, VSU terminated Fuciarelli's contract as assistant vice president and dean, which ended his administrative duties. He remained a tenured faculty member, but his salary and benefits were reduced. Fuciarelli appealed VSU's decision

to terminate his administrative duties to the Board of Regents, but the Board affirmed VSU's decision.

On July 11, 2013, after exhausting his administrative remedies, Fuciarelli filed a complaint asserting causes of action against these defendants: the Board of Regents, including its unit institution VSU[1]; William McKinney, in his individual capacity and in his official capacity as President of VSU; and Karla Hull, in her individual capacity and in her official capacity as the former Acting Vice President for Academic Affairs at VSU. Against each defendant, Fuciarelli asserted a claim for "False Claims Whistleblower Retaliation" under the TPFCA, citing OCGA § 23-3-122; and a claim for "Public Employee Whistleblower Retaliation," citing OCGA § 45-1-4.[2]

---

[1] VSU is not a separate or distinct legal entity from the Board of Regents and, therefore, cannot be sued. See *McCafferty v. Medical College of Ga.*, 249 Ga. 62, 65 (1) (287 SE2d 171) (1982), and *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, n.1 (630 SE2d 85) (2006) (both holding that the power to sue and be sued is vested in the Board of Regents, not in individual member institutions).

[2] The gist of Fuciarelli's complaint appears to be that VSU, in declining to implement Fuciarelli's research management tools, had misused or was at risk of "misusing government funds in many of its sponsored [research] programs," and that when Fuciarelli complained to the administration about those matters, the administration retaliated by demoting him. It is unclear from the complaint whether a false claim was submitted to the State of Georgia. However, it is clear that Fuciarelli is *not* pursuing a *qui tam* action based upon a specific false claim. In a *qui tam* action, a private individual participates in a prosecution or a civil action on behalf of or for the benefit of a government and may receive all or part of any penalty imposed

The defendants moved to dismiss Fuciarelli's TPFCA claims, asserting, in pertinent part, that claims against McKinney and Hull in their official capacities and the Board of Regents are barred by sovereign immunity and that McKinney and Hull are not proper defendants to those claims in their individual capacities. After the parties had briefed these issues, the trial court issued an order directing the parties "to submit supplemental briefs on whether Fuciarelli must obtain written approval from the Attorney General [prior to bringing claims under the TPFCA] as required by OCGA § 23-3-122 (b) (1)." Fuciarelli does not contend that he obtained the Attorney General's approval before filing his claims, and the record contains no evidence that he sought or was given that approval prior to filing the instant lawsuit.

On December 9, 2013, the trial court ruled, in pertinent part, that Fuciarelli's claims pursuant to OCGA § 23-3-122 (l) are barred by his failure to obtain written approval from the Attorney General. The trial court denied the defendants' motion to dismiss Fuciarelli's remaining claims brought pursuant to OCGA § 45-1-4, which prohibits retaliation against a public employee who discloses noncompliance with

against the offending party. See, e.g., *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1233 (II) (11th Cir. Fla. 2008) ("'Qui tam'" is an abbreviation for *qui tam pro domino rege quam pro seipso*, which means 'he who as much for the king as for himself.'") (citation omitted; emphasis original).

state law. On appeal, Fuciarelli contends that the trial court erred in dismissing his TPFCA claim on the basis that he lacked Attorney General approval, arguing that "a retaliation civil action belongs exclusively to the party bringing the claim and does not require Attorney General approval."

1. Pretermitting whether there is any merit to Fuciarelli's argument with respect to the Board of Regents, VSU, and Hull and McKinney in their official capacities, the trial court nevertheless properly dismissed the OCGA § 23-3-122 (l) retaliation claims against these governmental defendants. As the defendants argued below in their original brief supporting their motion to dismiss in the trial court, the General Assembly did not intend for the state or any of its political subdivisions to be subject to retaliation claims brought pursuant to the TPFCA. Nothing in the TPFCA expressly or impliedly waives the government's immunity from suit. Consequently, we must affirm the trial court's order with respect to these defendants under the "right for any reason" rule.[3]

---

[3] Georgia appellate courts may apply the "right for any reason" rule when reviewing de novo certain judgments. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied.") (citation omitted). See also *Craigo v. Azizi*, 301 Ga. App. 181, 187 (3) (687 SE2d 198) (2009) (dismissal of complaint affirmed under right for any reason rule). A summary judgment "must be affirmed if

5

"Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability, and, therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue." (Citations omitted.) *McCobb v. Clayton County.*, 309 Ga. App. 217, 217-218 (1) (a) (710 SE2d 207) (2011). Except as otherwise provided in the Georgia Constitution, "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. 1983 Art. I, Sec. II, Par. IX (e). See *Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 597-598 (2) (755 SE2d 184) (2014). "In this regard, implied waivers of governmental immunity should not be favored." (Citation and punctuation omitted.) *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013). The state's sovereign immunity extends to the Board of Regents. *Wilson v. Bd. of Regents of the Univ. Sys. of Ga.*, 262 Ga. 413, 414

it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." *Anderson v. Jones*, 322 Ga. App. 311, 312 n. 2 (745 SE2d 787) (2013). Because the issue of sovereign immunity was presented in defendant's motion to dismiss and because Fuciarelli had an opportunity to respond, the application of the "right for any reason" rule is appropriate. See *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001).

.

(3) (1992). And "[s]uits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." (Punctuation and footnote omitted.) *Cameron v. Lang*, 274 Ga. 122, 126 (3) (548 SE2d 341) (2001). "The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver[.]" (Citation omitted.) *Bonner v. Peterson*, 301 Ga. App. 443 (687 SE2d 676) (2009). Fuciarelli cannot meet that burden.

The TPFCA does not expressly provide that it waives the state's sovereign immunity. Moreover, it does not set forth circumstances demonstrating an implied waiver of sovereign immunity. The TPFCA does not create a cause of action against the state nor does it provide that an aggrieved party may collect money damages from the state. See *Colon v. Fulton County*, 294 Ga. at 95-96 (1).[4] In fact, the thrust of the

---

[4] By comparison, the Supreme Court of Georgia concluded that the General Assembly, in enacting OCGA § 45-1-4, which authorizes certain retaliation claims against public employees, waived sovereign immunity. The court reasoned that

> where, as here, the Legislature has specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and has further expressly stated that an aggrieved party is entitled to collect money damages from the government in connection with a successful claim under the statute, there can be no doubt that the

7

TPFCA is to authorize the State of Georgia, through the Attorney General or a designee, to bring civil actions to recoup losses that the state or a local government has suffered as a result of false claims presented to the state or a local government by others. For example, OCGA § 23-3-121 (a) sets forth a scheme by which those who present false or fraudulent claims for public funds as defined by the TPFCA "shall be liable *to the State of Georgia* for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false or fraudulent claim, plus three times the amount of damages which the state or local government sustains because of the act of such person." (emphasis supplied). To the extent that a private person may also bring such a claim, that TPFCA expressly provides that such a claim shall be in the government's name and with the government's approval.[5] Moreover, under certain

---

Legislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute.

*Colon v. Fulton County*, 294 Ga. at 95-96 (1).

[5] OCGA § 23-3-122 (b) (1) provides, in relevant part:

Subject to the exclusions set forth in this Code section, a civil action under this article [that is, under the TPFCA] may also be brought by a private person upon written approval by the Attorney General. A civil action shall be brought in the name of the State of Georgia or local

circumstances, the government has the right to intervene in the litigation, including the right to settle or dismiss the suit without the private person's consent. OCGA § 23-3-122 (c). A private person's *qui tam* recovery in such a civil action is limited to a percentage of the proceeds paid to the government. OCGA § 23-3-122 (h). And the "state or local government shall not be liable for expenses which a private person incurs in bringing a civil action under [the TPFCA]." OCGA § 23-3-122 (k).

Considered within this context, we conclude that OCGA § 23-3-122 (l)(1) does not create a retaliation cause of action *against the government* such that sovereign immunity is waived. That Code section provides, in pertinent part:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others *in furtherance of a civil action under this Code section or other efforts to stop one or more violations of this article [that is, the TPFCA]*.

OCGA § 23-3-122 (1)(1) (emphasis supplied). This Code section clarifies that, in addition to any *qui tam* recovery, a whistleblower is also entitled to all the relief

government, as applicable.

9

necessary to be made whole from the entity that retaliated against him or her. In the context of the TPFCA, that entity is not the governmental entity, but, rather, the "person, firm, corporation, or other legal entity" responsible for submitting the false claim to "the state or local government." See OCGA § 23-3-120 (1) (defining a claim); OCGA § 23-3-121 (defining those who may be liable for submitting a false claim).[6] Construing OCGA § 23-3-122 (l) (1) to allow a retaliation claim against the government would be contrary to the law enforcement purpose of the statute, which is to recoup public funds.[7] For these reasons, we hold that the General Assembly did not waive the state's sovereign immunity when it enacted the TPFCA. Consequently, the trial court did not err in dismissing Fuciarelli's retaliation claim made pursuant to OCGA § 23-3-122 (l)(1) against the governmental defendants.

---

[6] See also OCGA § 23-3-124, pertaining to venue of TPFCA civil actions. Defendants are described as those having submitted "a false or fraudulent claim *to the state or local government*." (emphasis supplied).

[7] See, e.g, OCGA §§ 23-3-122 (b) (6) ("To effectuate the law enforcement purposes of this article in combating fraud and false claims directed at the public's funds, it is the public policy of this state that private persons be authorized to take actions to provide to the Attorney General or local government such information and evidence."; 23-3-126 (b) (The TPFCA "shall be broadly construed and applied to promote the public's interest in combating fraud and false claims directed at the public's funds.").

2. The trial court, however, erred in dismissing Fuciarelli's OCGA § 23-3-122 (l) retaliation claims against Hull and McKinney in their individual capacities on the ground that Fuciarelli failed to obtain Attorney General approval prior to filing his suit alleging retaliation claims under the TPFCA. Attorney General approval is not required for retaliation claims, which are personal to the plaintiff.

The TPFCA provides that, "[s]ubject to the exclusions set forth in [OCGA § 23-3-122], a civil action under *this article* may also be brought by a private person upon written approval by the Attorney General." OCGA § 23-3-122 (b) (1) (emphasis supplied). The use of the word "article" in this context was intended to embrace civil actions brought in the name of government; applying it to retaliation claims was not intended and would lead to absurd results.

> In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the

11

statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

(Punctuation and emphasis omitted.) *Rite-Aid Corp. v. Davis*, 280 Ga. App. 522, 524 (1) (634 SE2d 480) (2006).

In the context of OCGA § 23-3-122 (b) (1), the "civil action" referenced is a an action brought "in the name of the State of Georgia or local government[.]" Id. This Code section provides that, with Attorney General approval, a private person "may also" bring such a claim. Thus, the subsection is itself an exception to the general rule that only governments may prosecute TPFCA claims. The subsection is intended to apply the prerequisite of Attorney General approval to any action under the TPCFA that a private person brings in the name of the government for the benefit of the government. Retaliation claims, however, are personal to the plaintiff and are meant to afford proper plaintiffs with all relief necessary to make them whole. Because Fuciarelli was not required to obtain the Attorney General's approval prior to filing his TPFCA retaliation action, the trial court erred in dismissing Fuciarelli's claims against Hull and McKinney in their individual capacities.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Phipps, P. J., concur. McFadden, J., fully concurs in Division 1 and concurs specially as to*

12

*Division 2.  Dillard, Ray and McMillian, JJ., fully concur in Division 1 and dissent as to Division 2.*

A15A0223. FUCIARELLI v. MCKINNEY et al.                    McF-XXX

MCFADDEN, Judge, concurring fully.

I concur fully in the majority opinion. I write separately as to Division 2 to emphasize that the majority's construction of OCGA § 23-3-122 (l) is faithful to the text of the statute. As the majority correctly holds, subsection (l) creates a cause of action that is personal to the plaintiff, distinct from the cause of action addressed in the rest of § 23-3-122, and not subject to the notice requirement of OCGA § 23-3-122 (b).

The dissent implies that we are simply presented with a syllogism "that could not be more clear" and merely leads to an unpalatable result. But contrary to the dissent, the question before us is whether there is a controlling distinction between

actions under subsection (l) of OCGA § 23-3-122 – which are personal to the plaintiff – and other civil actions under that Code section as a whole – which are on behalf of the state. The text of the statute does draw such a distinction, and it is controlling. Subsection 23-3-122 (l) is distinct from the rest of OCGA § 23-3-122 and is likewise distinct from the rest of the Article of which that statute is a part.

That article, Title 23, Chapter 3, Article 6, deals with false or fraudulent claims made against state and local governments. See OCGA § 23-3-120 (1) (defining "Claim"). That statute, OCGA § 23-3-122, addresses the procedures for bringing civil actions under Article 6. As the Solicitor General explained at oral argument, "The purpose of th[at] statute is to recover state moneys."

But subsection 23-3-122 (l), the final subsection of a lengthy statute, addresses a distinct type of action. The subsection refers repeatedly to an "action under this subsection" and sets out rules related to such actions, distinguishing them from an "action under this Code section," as a whole.

It is significant that the text of subsection (l) distinguishes "an action under this *subsection*" from "a civil action under this *Code section*." As Justice Scalia and Professor Garner note in Reading Law, "where the document has used one term in one place, and a materially different term in another, the presumption is that the

different term denotes a different idea." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (Presumption of Consistent Usage) (1st ed. 2012). And subsection (l) explains the relationship between these two different ideas. A cause of action under subsection (l) arises when a person suffers retaliation as a consequence of "lawful acts done . . . in furtherance of a civil action under this Code section" as a whole. OCGA § 23-3-122 (l) (1).

It is true that OCGA § 23-3-122 also uses the phrase "civil action under this *article*." OCGA § 23-3-122 (a), (b) (emphasis added). But the point of that usage is that the civil actions authorized in subsections (a) and (b) are for the purpose of vindicating the government interests addressed throughout the article. Consequently the subsequent references throughout the statute to "action[s] under this Code section" refer to the same type of actions. As the majority notes, there is no other sensible reading.

This analysis is reinforced by the rule that Scalia and Garner call the Scope-of-Subparts Canon, which provides, "material contained in unindented text relates to all the following or preceding indented subparts." SCALIA & GARNER, supra, at 156. Neither subsection (b), which contains the notice requirement, nor subsection (l) is indented. They are of equal rank in the statutory structure.

3

A15A0223.  FUCIARELLI v. MCKINNEY et al.


DILLARD, Judge, concurring in part and dissenting in part.

Although I fully concur in the majority's opinion as to Division 1 that OCGA § 23-3-120 *et. seq.* does not waive the state's sovereign immunity, I do not agree with the majority's holding in Division 2. To the contrary, the plain language of OCGA § 23-3-122 (b) (1) unequivocally requires written approval of the Attorney General to bring a retaliation claim under OCGA § 23-3-122 (l). Thus, I respectfully dissent as to this division of the majority opinion.

In interpreting any statute, we necessarily begin our analysis with familiar and binding canons of construction. And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[1] Thus, we must afford the statutory text its plain and ordinary meaning,[2] consider the text contextually,[3] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[4] and

---

[1] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *see Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) (same).

[2] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 16 (1st ed. 2012) ("Textualism, in its purest form, begins and ends with what the text says and fairly implies.").

[3] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___, ___ (II) (B) (133 SCt 2247 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); SCALIA & GARNER, *supra* note 2, at 167 ("Context is a primary determinant of meaning.").

[4] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273.

2

seek to "avoid a construction that makes some language mere surplusage."[5]

Importantly, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must "construe the statute accordingly."[6]

Here, the plain meaning of OCGA § 23-3-122 (b) (1) could not be more clear. Prior to bringing a civil action under *Article* 6 (False or Fraudulent Claims) of Chapter 3 (Equitable Remedies and Proceedings Generally) to Title 23 (Equity) of the Official Code of Georgia, a private person must obtain written approval from the Attorney General:

> Subject to the exclusions set forth in this Code section, *a civil action under this article may also be brought by a private person upon written approval by the Attorney General*. A civil action shall be brought in the name of the State of Georgia or local government, as applicable. The civil action may be dismissed only if the Attorney General gives written

---

[5] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 518  (1) (765 SE2d 687) (2014); *see also* SCALIA & GARNER, *supra* note 2, at 174 ("The surplusage canon holds that it is no more the court's function to revise by subtraction than by addition.").

[6] *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (punctuation omitted); *accord Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

3

consent to the dismissal stating the reasons for consenting to such dismissal and the court enters an order approving the dismissal.[7]

And in the case *sub judice*, Fuciarelli did not obtain written approval from the Attorney General before bringing his claim under OCGA § 23-3-122 (l)[8] and, accordingly, the trial court properly dismissed his action.

Judge McFadden gamely attempts to rehabilitate Division 2 of the majority opinion, but these efforts are no more convincing than the majority's refashioning of the statute. The plain meaning of OCGA § 23-3-122 (b) (1) makes it abundantly clear that the requirement imposed on "a private person" to obtain "written approval by the Attorney General" prior to initiating a "civil action under this *article*" means exactly what it says, that this statutory requirement applies to the entirety of the statutory

---

[7] OCGA § 23-3-122 (b) (1) (emphasis supplied). *Cf.* 31 U.S.C. § 3730 (b) (1) (providing that under the federal False Claims Act, private persons may bring a civil action, but only requiring written approval from the Attorney General prior to *dismissal* for any such action, not prior to initiation).

[8] *See* OCGA § 23-3-122 (l) (1) ("Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent, or associated others in furtherance of a civil action under this Code section or other efforts to stop one or more violations of this article.").

4

*article* (*i.e.*, Title 23, Chapter 3, Article 6). Try as he might, there is simply no textual justification for Judge McFadden's assertion that "[s]ubsection 23-3-122 (l) is . . . distinct from the rest of the Article of which that statute is a part," when OCGA § 23-3-122 (b) (1) explicitly states the exact opposite.

Thus, while I fully concur with the majority in Division 1, I respectfully dissent from Division 2 because, for all of the foregoing reasons, the trial court properly granted the defendants' motion to dismiss.

I am authorized to state that Judge Ray and Judge McMillian join in this opinion concurring in part and dissenting in part.