S12G1905. COLON et al. v. FULTON COUNTY.
S12G1911. FULTON COUNTY v. WARREN.
S12G1912. FULTON COUNTY v. COLON.
(751 SE2d 307)

MELTON, Justice.

In these consolidated cases, Maria Colon and Gwendolyn Warren filed separate lawsuits against their employer, Fulton County, pursuant to Georgia's whistleblower statute, OCGA § 45-1-4. Colon and Warren alleged that they were retaliated against after they jointly disclosed to their supervisors and refused to cover up that County employees were violating laws, rules, and regulations, thereby fraudulently wasting and abusing County funds and public money. The County moved to dismiss the actions based on sovereign immunity and moved for judgment on the pleadings, arguing that Colon's and Warren's retaliation claims under OCGA § 45-1-4 could not lie against the County because their complaints did not relate to a "state program or operation." See OCGA § 45-1-4 (b) ("A public employer may receive and investigate complaints or information from any public employee concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer"). The trial court denied both motions.

On appeal, the Court of Appeals held that the cause of action set forth in OCGA § 45-1-4 unambiguously expresses a specific waiver of

sovereign immunity and the extent of such waiver, even though the statute does not expressly state that sovereign immunity is waived. See *Fulton County v. Colon*, 316 Ga. App. 883, 885 (1) (730 SE2d 599) (2012). However, the Court of Appeals nevertheless vacated the trial court's order denying the County's motion to dismiss, finding that the trial court erred in its determination that Colon and Warren had stated claims under OCGA § 45-1-4 (d).[1] Id. at 889 (3). Specifically, the Court of Appeals concluded that, although OCGA § 45-1-4 (d) talks solely in terms of preventing retaliation against a public employee for "disclosing a violation of or noncompliance with a law, rule, or regulation," the legislature did not intend for subsection (d) to be read alone. Instead, subsection (d) was to be read in conjunction with the language of subsection (b). When reading these subsections together, the Court of Appeals determined that subsection (b) was intended to limit the statute's reach so that it only provides protection to the extent that a public employee's complaints relate to "state programs or operations" under the public employer's jurisdiction. See generally id. at 889 (2). The Court of Appeals then turned its attention to what was meant by "state programs or operations" under the facts of this case and held that where an employer qualifies as a "public employer" under the statute only because it received funds from the state (a situation it found to be undisputed by the parties in this case), the statute provides protection from retaliation only if the employee's complaints related to a "state-funded program or operation under the jurisdiction of the public employer." Id. at 889 (2). It then stated that state programs or operations under a county's jurisdiction are those that are "funded at least in part by the state but need not be of state origin." Id. Thus, the Court of Appeals remanded the case to the trial court for a determination of whether Colon's and Warren's complaints related to a state-funded program or operation under Fulton County's jurisdiction.

All of the parties filed petitions for certiorari to appeal from the Court of Appeals' decision, and this Court granted all of the petitions to determine whether the Court of Appeals properly construed OCGA § 45-1-4. In Case No. S12G1905, Colon and Warren argue that

---

[1] OCGA § 45-1-4 (d) (2) and (d) (3) provide:
   (2) No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.
   (3) No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

the Court of Appeals erred in construing OCGA § 45-1-4 such that employees of governmental entities may maintain an action under subsection (d) of the statute only if their complaints relate to "programs or operations" that are "funded at least in part by the state." In Case Nos. S12G1911 and S12G1912,[2] Fulton County contends that the Court of Appeals erred in concluding that OCGA § 45-1-4 expresses a specific waiver of the County's sovereign immunity. For the reasons that follow, we affirm in Case Nos. S12G1911 and S12G1912,[3] and we reverse in Case No. S12G1905.

### Case Nos. S12G1911 and S12G1912

1. We agree with the Court of Appeals that OCGA § 45-1-4 sets forth a specific waiver of the County's sovereign immunity and the extent of such waiver.

Article I, Section II, Paragraph IX (e) of the Georgia Constitution provides that "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." In this regard, "[i]mplied waivers of governmental immunity should not be favored." *City of Atlanta v. Gilmere*, 252 Ga. 406, 409 (314 SE2d 204) (1984). This does not mean, however, that the Legislature must use specific "magic words" such as "sovereign immunity is hereby waived" in order to create a specific statutory waiver of sovereign immunity. See *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22 (3) (608 SE2d 611) (2005); *City of Atlanta v. Barnes*, 276 Ga. 449, 452 (3) (578 SE2d 110) (2003) ("When a statute provides the right to bring an action for a tax refund against a governmental body, that statute provides an express waiver of immunity and establishes the extent of the waiver (the amount of the refund)."). See also *Williamson v. Dept. of Human Resources*, 258 Ga. App. 113 (1) (572 SE2d 678) (2002). Indeed, where, as here, the Legislature has specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and has further expressly stated that an aggrieved party is entitled to collect money damages from the

---

[2] The briefs in these two cases are identical, as the separate case numbers exist only insofar as they relate to each of the individual plaintiffs involved below (i.e., Case No. S12G1911 relates to Warren and Case No. S12G1912 relates to Colon). The two case numbers will therefore be handled together for purposes of this opinion.

[3] Because the issue relating to the County's waiver of sovereign immunity would be dispositive in this case if decided in the County's favor, we will address Case Nos. S12G1911 and S12G1912 first.

government in connection with a successful claim under the statute, there can be no doubt that the Legislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute. See OCGA § 45-1-4 (d) (prohibiting a "public employer" from retaliating against its employees), (a) (defining a "public employer" as, among other things, "the executive, judicial, or legislative branch of the state . . . or any local or regional governmental entity that receives any funds from the State of Georgia"), (e) (1) (creating specific right for "[a] public employee who has been the object of retaliation in violation of this Code section [to] institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection"), (e) (2) (allowing public employee who succeeds on retaliation claim to recover, among other things, "[c]ompensation for lost wages, benefits, and other remuneration; and . . . [a]ny other compensatory damages allowable at law"), and (f) (allowing court to "award reasonable attorneys' fees, court costs, and expenses to a prevailing public employee" based on his or her successful retaliation claim authorized by OCGA § 45-1-4). See also *Sawnee Elec. Membership Corp.*, supra; *Williamson*, supra. Indeed, in order for the statute to have any meaning at all here, it can only be interpreted as creating a waiver of sovereign immunity. See, e.g., *Chatman v. Findley*, 274 Ga. 54, 55 (548 SE2d 5) (2001) ("Because the General Assembly is presumed to intend something by passage of [an] act, we must construe its provisions so as not to render it meaningless") (citation omitted).

We therefore affirm the Court of Appeals' decision insofar as it relates to the express waiver of sovereign immunity created by OCGA § 45-1-4.

### Case No. S12G1905

2. We disagree with the Court of Appeals, however, with respect to its interpretation of OCGA § 45-1-4 regarding causes of action for alleged retaliation. In this regard, in order to determine whether the Court of Appeals' interpretation of OCGA § 45-1-4 as a whole, and subsections (b) and (d) of the statute in particular, is correct, we must turn to the basic rules of statutory construction. Specifically,

> we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189,

191 (587 SE2d 24) (2003). Furthermore, "[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Six Flags over Ga. II, L.P. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003). In this regard, "under our system of separation of powers this Court does not have the authority to rewrite statutes." *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006).

OCGA § 45-1-4 (d) (2) and (3) speak only in terms of prohibiting an employer from "retaliat[ing] against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency" or "for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." These subsections say nothing of being limited by subsection (b) of the statute.

In turn, subsection (b) of the statute does not mention subsection (d) in any way. OCGA § 45-1-4 (b) states:

> A public employer may receive and investigate complaints or information from any public employee concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer.

By its plain terms, subsection (b) of OCGA § 45-1-4 deals with a public employer's ability to *"receive and investigate complaints or information . . .* concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer." (Emphasis supplied.) It has nothing to do with, and indeed makes no mention of, retaliation. In short, there is nothing in the plain language of OCGA § 45-1-4 to suggest that the Legislature intended for subsections (b) and (d) of the statute to be read together such that retaliation claims under subsection (d) are somehow limited by a public employer's ability to "receive and investigate complaints or information" relating to possible "fraud, waste, and abuse" in state programs under subsection (b). See also *Forrester v. Ga. Dept. of Human Svcs.*, 308 Ga. App. 716, 723 (1) (a), n. 25 ("OCGA § 45-1-4 only covers complaints of 'abuse, fraud, and waste' in the context of a public employer's ability to receive and investigate such complaints by public employees, *not* in the context of retaliation, which explicitly only encompasses disclosures of 'violation(s) of or noncompliance with a law, rule, or regulation' ") (citation and punctuation omitted; emphasis in original).

Subsections (b) and (d) of the statute do not have to be read together in the manner suggested by the Court of Appeals in order for all of the statutory provisions to work together harmoniously. See *Fair v. State*, 288 Ga. 244, 252 (2) (702 SE2d 420) (2010). ("The cardinal rule of statutory construction is to seek the intent of the Legislature, and language in one part of a statute must be construed 'in the light of the legislative intent as found in the statute as a whole' ") (citation omitted). Specifically, a straightforward reading of each section of the statute reveals the following. All of the operative terms of subsection (d) are defined in OCGA § 45-1-4 (a),[4] and the Legislature specifically did not state in either subsection (a) or (d) that a claim for retaliation must be based on complaints relating to programs or operations funded by the state.[5] Subsection (d) deals

---

[4] OCGA § 45-1-4 (a) provides:

(a) As used in this Code section, the term:

(1) "Government agency" means any agency of federal, state, or local government charged with the enforcement of laws, rules, or regulations.

(2) "Law, rule, or regulation" includes any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance.

(3) "Public employee" means any person who is employed by the executive, judicial, or legislative branch of the state or by any other department, board, bureau, commission, authority, or other agency of the state. This term also includes all employees, officials, and administrators of any agency covered by the rules of the State Personnel Board and any local or regional governmental entity that receives any funds from the State of Georgia or any state agency.

(4) "Public employer" means the executive, judicial, or legislative branch of the state; any other department, board, bureau, commission, authority, or other agency of the state which employs or appoints a public employee or public employees; or any local or regional governmental entity that receives any funds from the State of Georgia or any state agency.

(5) "Retaliate" or "retaliation" refers to the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

(6) "Supervisor" means any individual:

(A) To whom a public employer has given authority to direct and control the work performance of the affected public employee;

(B) To whom a public employer has given authority to take corrective action regarding a violation of or noncompliance with a law, rule, or regulation of which the public employee complains; or

(C) Who has been designated by a public employer to receive complaints regarding a violation of or noncompliance with a law, rule, or regulation.

[5] In this regard, the Legislature made sure to define public employees and employers under subsections (a) (3) and (4) in such a manner as to include "governmental entit[ies] that receive[ ] any funds from the State of Georgia or any state agency," but specifically declined to use this same definitional language in subsection (a) (5) with respect to the types of disclosures by a public employee that could give rise to a retaliation claim if an adverse employment action was taken against the employee for having "disclos[ed] a violation of or noncompliance with a

with the elements of a claim for retaliation. Subsections (e) and (f) set forth the right to a cause of action and the relief that may be obtained by a public employee in the event that the employee is retaliated against in violation of the statute.[6] Subsection (b) authorizes the public employer to receive and investigate complaints from public employees "concerning the possible existence of fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer." And subsection (c), with limited exceptions, prohibits the public employer from disclosing the whistle-blowing public employee's identity without written consent.[7] There is nothing about this straightforward construction of OCGA § 45-1-4 that would require subsections (b) and (d) to be read in the manner suggested by the Court of Appeals in order for the statute to make sense.[8]

---

law, rule, or regulation to either a supervisor or government agency." If the Legislature intended for the disclosures giving rise to a potential retaliation claim to be limited to those relating to programs or operations funded by the state, it could have expressly stated so.

[6] OCGA § 45-1-4 (e) and (f) provide:

(e) (1) A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier.

(2) In any action brought pursuant to this subsection, the court may order any or all of the following relief:

(A) An injunction restraining continued violation of this Code section;

(B) Reinstatement of the employee to the same position held before the retaliation or to an equivalent position;

(C) Reinstatement of full fringe benefits and seniority rights;

(D) Compensation for lost wages, benefits, and other remuneration; and

(E) Any other compensatory damages allowable at law.

(f) A court may award reasonable attorney's fees, court costs, and expenses to a prevailing public employee.

[7] OCGA § 45-1-4 (c) provides:

(c) Notwithstanding any other law to the contrary, such public employer shall not after receipt of a complaint or information from a public employee disclose the identity of the public employee without the written consent of such public employee, unless the public employer determines such disclosure is necessary and unavoidable during the course of the investigation. In such event, the public employee shall be notified in writing at least seven days prior to such disclosure.

[8] Indeed, the straightforward construction of the statute outlined above makes perfect sense, as a public employee might not even know whether state money is involved at the time that he or she discovers and reports a violation of the rules to his or her supervisor. Under OCGA § 45-1-4, regardless of whether a public employee has knowledge of the extent to which state funds may or may not be involved in a reported violation of rules or regulations, the public employee would still be protected from retaliation after making the disclosure. This makes sense, as OCGA § 45-1-4 would then operate such that a public employee would always be protected from retaliation when disclosing improper conduct, rather than offering protection for some public employees who disclose improper conduct (i.e., those reporting rule violations

In this regard, the Court of Appeals erred by inappropriately grafting the provisions of subsection (b) onto subsection (d) of OCGA § 45-1-4, and it compounded this error by then defining the types of "state programs or operations" that would allegedly have to be involved in order for a public employee to present a viable claim for retaliation under subsection (d). Indeed, by inserting the terms of subsection (b) into subsection (d), and then defining these inapplicable terms with language that does not exist in OCGA § 45-1-4, the Court of Appeals committed error, as, "under our system of separation of powers[, courts do] not have the authority to rewrite statutes." *Fielden*, supra, 280 Ga. at 448.

Accordingly, we reverse the Court of Appeals' decision with respect to its interpretation of OCGA § 45-1-4 (b) and (d).

*Judgments affirmed in Case Nos. S12G1911 and S12G1912. All the Justices concur, except Blackwell, J., who concurs in judgment only as to Division 1. Judgment reversed in Case No. S12G1905. All the Justices concur.*

DECIDED NOVEMBER 18, 2013.

*Parks, Chesin & Walbert, Allen L. Parks, Jr., Larry H. Chesin, Regan E. Keebaugh*, for Colon and Warren.

*Larry W. Ramsey, Jr., Kaye W. Burwell, Diana L. Freeman, Robert D. Ware, Jerolyn W. Ferrari*, for Fulton County.

---

relating to state funded operations) and leaving others who disclose improper conduct without such protection (i.e., those reporting rule violations that do not relate to state funded operations).