In the Supreme Court of Georgia

Decided: February 22, 2016

S15A1638. TDGA, LLC v. CBIRA, LLC et al.

MELTON, Justice.

This case requires a determination of whether conventional actions for quiet title, see OCGA § 23-3-40 et seq., where the State of Georgia asserts an interest in the property at issue, are barred by the doctrine of sovereign immunity. For the reasons set forth below, we find that they are barred and affirm the ruling of the trial court. We further find, however, that in rem actions for quiet title, see OCGA § 23-3-60 et seq., are not barred by sovereign immunity.

The underlying facts of this case are not in dispute. TDGA, LLC acquired a certain piece of property from another entity that had purchased the property at a tax sale. Afterwards, TDGA followed the non-judicial process of foreclosing any right of redemption to the property in accordance with OCGA § 48-4-45 and OCGA § 48-4-46. TDGA provided notice of the foreclosure of

redemption rights to all interested parties in the property, including the Georgia Department of Revenue and the Georgia Department of Labor (Departments), each of which held recorded tax liens against the property. Following the completion of this procedure, which the Departments do not contest, TDGA filed the current quiet title action pursuant to OCGA § 23-3-40, conventional quia timet, again naming all parties with any recorded interest in the underlying property. TDGA took this action to obtain a ruling that all redemption rights had been properly foreclosed, which, in turn, TDGA would use to show that it held marketable title for title insurance purposes.[1] After being served with the quiet title action, the Departments, which have not released their respective liens, filed a joint motion to dismiss, arguing that the suit was barred by sovereign immunity. In its ruling, the trial court determined that, although TDGA had properly foreclosed the right of redemption of all parties, including those of the Departments, the suit was nonetheless barred by sovereign immunity pursuant

---

[1] Although OCGA § 48-4-45 provides that tax lienholders who receive proper statutory notice are divested of any interest in the property following the expiration of the redemption period, it appears that title insurance companies require the completion of a successful quiet title action to consider title truly marketable and insurable.

to <u>Ga. Dept. Nat'l Res. v. Ctr. For Sustainable Coast</u>, 294 Ga. 593 (2) (755 SE2d 184) (2014) (sovereign immunity is a bar to injunctive relief). <u>Sustainable Coast</u> does require this result in the context of a conventional quiet title action in which the State must be named as a party and the action may be brought against the State.

> First, some settled law must be set forth. The Georgia Constitution states:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. Art. I, Sec. II, Par. IX (e). Sovereign immunity is immunity "from suit," involving "actions or claims against the state and its departments, agencies, officers, and employees." Ga. Const. Art. I, Sec. II, Par. IX (a). "'In construing a constitutional provision, the ordinary signification shall be applied to words.'" (Citation omitted.) <u>Blum v. Schrader</u>, 281 Ga. 238, 239 (1) (637 SE2d 396) (2006). Furthermore,

> this Court must honor the plain and unambiguous meaning of a constitutional provision. Our duty is to construe and apply the Constitution as it is now written. Where the natural and reasonable meaning of a constitutional provision is clear and capable of a

3

natural and reasonable construction, courts are not authorized either to read into or read out that which would add to or change its meaning.

(Citations and punctuation omitted). Id. at 239–40 (2). Therefore, in the greatest general sense, the State and its agencies are immune from suit unless the legislature specifically states otherwise. Neither the statutory provisions regarding foreclosure of the right of redemption nor conventional quiet title actions contain an explicit waiver of sovereign immunity. For this reason, the State and its agencies are immune from suit under OCGA § 23-3-40

This does not mean, however, that there is no mechanism for quieting title against all potential claimants, including the State. OCGA § 23-3-60 provides such a mechanism. A quiet title action under this statute is in rem. It is not, in fact or effect, an action against the State or any other person or entity. It is an action against the underlying property, itself, and its purpose is to remove any and all clouds on the title of that property.[2] In an "action in rem," "the named

---

[2] OCGA § 23-3-61 provides:
Any person, which term shall include a corporation, partnership, or other association, who claims an estate of freehold present or future or any estate for years of which at least five years are unexpired, including persons holding lands under tax deeds, in any land in this state, whether in the actual and peaceable possession thereof or not

4

defendant is real or personal property." Black's Law Dictionary (10th ed. 2014).

Any person who claims an interest in that property/defendant must affirmatively assert that claim against the property/defendant in the quiet title action. So, by its very nature, an in rem quiet title action is not subject to sovereign immunity because it does not involve a claim against the State, though the State may certainly make a claim to the property in question during the pendency of the quiet title action.

Although we do not base our conclusion in this case on Eleventh Amendment principles, precedent in that area of law supplies a persuasive theoretical underpinning for this result. In Tanner v. Brasher, 254 Ga. 41, 42 (1) (326 SE2d 218) (1985), we considered the Eleventh Amendment[3] analysis set

and whether the land is vacant or not, may bring a proceeding *in rem* against all the world to establish his title to the land and to determine all adverse claims thereto or to remove any particular cloud or clouds upon his title to the land, including an equity of redemption, which proceeding may be against all persons known or unknown who claim or might claim adversely to him, whether or not the petition discloses any known or possible claimants.

(Emphasis supplied.)

[3] The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit ... commenced or prosecuted against one of the . . . States" by citizens of another State. U.S. Const., Amdt. 11.

forth in United States v. Lee, 106 U.S. 196 (1 SCt 240, 27 LE 171) (1882). Based on Lee, we wholly rejected the contention that "[s]overeign immunity [enables] state officials to prove the state's ownership of land simply by saying that the state owns the land." Tanner, supra, 254 Ga. At 43 (1). We further explained:

> To hold otherwise would throw the constitutional doctrine of sovereign immunity in conflict with the constitutional provision for separation of powers. 1983 Const. of Georgia, Art. I, § II, Para. III. This court held in Dougherty v. Bethune, 7 Ga. 90, 92 (1849), "Whether facts upon which rights depend, are true or false, is an inquiry for the Courts to make, under legal forms; it belongs to the judicial department of the government. By the Constitution the legislative, [executive,] and judicial departments are distinct." As the legislature was denied the power to legislate the truth of facts in Dougherty, here we must deny the executive branch the power to conclusively establish facts by pleading them.

Id. at 43-44 (1).

This, of course, makes fundamental sense. For purposes of clearing title to any piece of property, it is necessary to include a full consideration of the State's rights, if any, because "title to all lands originates from . . . the state," OCGA § 44-5-1, and "[a]ll realty in this state is held under the state as the original owner thereof." OCGA § 44-5-2. But the State cannot assert title to otherwise privately-held land simply by issuing an edict or imposing a lien that

6

cannot be effectively challenged and impairs the marketability of the property. In rem quiet title actions, in which the property is the only defendant and sovereign immunity is not applicable, prevent this problem.[4]

Therefore, for all of the reasons set forth above, we find that sovereign immunity does bar a conventional quiet title action against the State, OCGA § 23-3-40, but sovereign immunity is not applicable to an in rem quiet title action against all the world. See OCGA § 23-3-60.

Judgment affirmed. All the Justices concur.

---

[4] Other forms of in rem actions are not in issue here, and we do not reach the application of sovereign immunity to them in this opinion.

S15A1638.  TDGA, LLC v. CBIRA, LLC et al.

NAHMIAS, Justice, concurring.

I join the Court's opinion in full, but I think it is important to note that there is a second type of proceeding in rem to quiet title where the State or its agencies may have claims, as well as another argument that supports the Court's conclusions.

The little-known and now little-used Land Registration Law of 1917, OCGA §§ 44-2-40 to 44-2-253, is found in the Property Code rather than in the Equity Code with other quiet title proceedings.  See generally 3 Daniel F. Hinkel, Pindar's Georgia Real Estate Law and Procedure §§ 24:1 to 24:66 (7th ed. updated 2015) ("Ga. Real Estate Law").  The Land Registration Law – Georgia's version of the "Torrens Acts" that were adopted in many states a century ago – established a proceeding "in rem against the land" at issue, with the court's decree operating directly on the land and establishing title to the land as to all those who are parties either "by name or under the general designation of 'whom it may concern.'"  OCGA § 44-2-61.  The statutory language regarding who is bound by the judgment in such a proceeding is broad and

expressly includes the State. OCGA § 44-2-83 ("Every decree rendered as provided in this article shall bind the land and bar all persons claiming title thereto or interest therein, shall quiet the title thereto, and shall be forever binding and conclusive upon and against all persons, *including this state*, whether mentioned by name in the order of publication or included under the general description 'whom it may concern.'" (emphasis added)). See also §§ 44-2-69 (providing for service of the petition upon the State or a county or municipality), 44-2-73 (stating that the notices provided for by the law "shall be conclusive and binding on all persons so notified and on all the world").

As the Court's opinion correctly explains, such an in rem proceeding against land does not implicate sovereign immunity, because it is not an "action or claim against the state" (or against any department, agency, officer, or employee of the State). Ga. Const. of 1983, Art. I, Sec. II, Par. IX (a). But it is also apparent from the text of the Land Registration Law that the General Assembly intended that any claims the State may have to the land at issue would be subject to adjudication by the court.

The same cannot be said of conventional quiet title actions, see OCGA § § 23-3-40 to 23-3-44, which pre-date the Land Registration Law, are not

2

brought in rem, and operate on particular instruments allegedly casting a cloud on title.  But the same *can* be said of actions under the Quiet Title Act of 1966, OCGA § 23-3-60 to § 23-3-73, which was "designed to adapt the 'title-laundry' function of the land registration proceeding to a simpler, speedier form of action."  3 Ga. Real Estate Law § 25:11 (footnote omitted).  See also id. § 24:1 ("Land registration proceedings in Georgia have been largely discontinued since the enactment of the Quiet Title Act of 1966, which serves the same purpose.").

The General Assembly clearly stated that the proceedings established by the Quiet Title Act are meant to determine *all* claims to the land at issue, so that there would be *no* uncertainty as to title that would render land in this State unmarketable:

> The purpose of this part is to create a procedure for removing *any* cloud upon the title to land, including the equity of redemption by owners of land sold at tax sales, and for readily and conclusively establishing that certain named persons are the owners of *all* the interests in land defined by a decree entered in such proceeding, so that there shall be no occasion for land in this state to be unmarketable because of *any* uncertainty as to the owner of *every* interest therein.

OCGA § 23-3-60 (emphasis added).  The proceeding is expressly in rem, and its scope is expressed in exceptionally broad terms, operating "against *all the*

3

*world* to establish [the petitioner's] title to the land and to determine *all adverse claims thereto* . . . , which proceeding may be against *all persons known and unknown who claim or might claim adversely to him*, whether or not the petition discloses any known or possible claimants." OCGA § 23-3-61 (emphasis added).

As the Court's opinion notes, all title to land in Georgia originates from the State, see OCGA §§ 44-5-1 and 44-5-2, so the State has a possible adverse claim of title that will be determined in virtually every action to quiet title against the world, and innumerable such actions also will involve tax claims of the State and its agencies and subdivisions of the sort at issue in this case. While the Quiet Title Act (unlike the Land Registration Law) does not include an express reference to binding "the state," interpreting the Quiet Title Act to exclude claims that the State raises or could raise would contradict the statute's against-all-the-world scope and purpose. Thus, as with the Land Registration Law, even if sovereign immunity had some import for this sort of in rem proceeding, it is clear that the General Assembly meant for any claims the State might assert against the land to be adjudicated by the court. See 3 Ga. Real Estate Law § 25:11 n.4 ("The [Quiet Title Act of 1966] itself does not expressly

4

provide the necessary consent of the State to be sued, but the action is against 'all the world,' which includes even a sovereign state, and its provisions for determining the validity of tax sales necessarily require that the state be made a party. In permitting 'persons holding lands under tax deeds' to bring the action (O.C.G.A. § 23-3-61), tax claims of [the] state, county, or city must be examined and adjudicated, and this would be impossible without making proper parties."). Cf. Colon v. Fulton County, 294 Ga. 93, 95-96 (751 SE2d 307) (2013) (explaining that "'[i]mplied waivers of governmental immunity should not be favored,' [but t]his does not mean . . . that the Legislature must use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity," as the operation of the statute at issue may necessarily imply such a meaning (citations omitted)).

In my view, these additional considerations leave no doubt that the Court's opinion reaches the correct conclusions.

I am authorized to state that Justice Blackwell joins in this concurrence.