**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 30, 2016**

# In the Court of Appeals of Georgia

A15A2256. TRICOLI v. WATTS et al.

ANDREWS, Presiding Judge.

Anthony Tricoli served as President of Georgia Perimeter College (GPC) for six years until he was blamed for a $16 million budget shortfall and resigned. He subsequently sued numerous individuals affiliated with GPC, the Board of Regents of the University System of Georgia, Board of Regents members, and the Georgia Attorney General for fraud, breach of contract, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act (RICO). The trial court granted the defendants' motion to dismiss, and this appeal followed.

On appeal, Tricoli contends the trial court erred by: (1) finding there was no enforceable written employment contract between Tricoli and the Board of Regents; (2) concluding that the Georgia Tort Claims Act (GTCA), OCGA § 50-21-20 et seq.,

barred his RICO claims; (3) rejecting his claims for fraud, extortion, and intentional infliction of emotional distress; (4) failing to consider his claims under the Open Records Act; (5) ignoring his abusive litigation claim; and (6) ignoring his motion for preliminary injunction. We find the trial court thoroughly addressed all the issues in this case and correctly concluded that Tricoli's claims failed under the Georgia Tort Claims Act (GTCA) and the doctrine of sovereign immunity.

1. Initially, we note that the standard of review applicable in this appeal is the one for review of a decision on a motion for summary judgment. Although the appeal is from the grant of a motion to dismiss, Tricoli's submission of documentary evidence in response to the motion to dismiss constituted, in effect, a request to convert the motion into one for summary judgment and waived the notice requirement for such a conversion. See *Gaddis v. Chatsworth Health Care Center,* 282 Ga. App. 615, 617 (639 SE2d 399) (2006); *Bd. of Regents of the Univ. System of Ga. v. Barnes*, 322 Ga. App. 47, 49 (1) (743 SE2d 609) (2013). (Exhibits attached to the pleadings would not operate to convert a motion to dismiss into a motion for summary judgment, *Gaddis*, supra, but because a motion to dismiss is not a pleading under OCGA § 9-11-7 (a), any documents submitted in conjunction with such a motion are outside the pleadings.)

Where a defendant, who would not bear the burden of proof at trial, moves for summary judgment and shows an absence of evidence to support any essential element of the plaintiff's case, "the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (697 SE2d 779) (2010). But when we review a grant or denial of summary judgment, we must construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

2. "[T]he defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract entered into by the state or its departments and agencies." (Punctuation and footnote omitted.) *Bd. of Regents of the Univ. System of Ga. v. Barnes*, 322 Ga. App. 47, 49 (2) (743 SE2d 609) (2013). Tricoli contends the trial court erred in concluding there was no valid written employment contract that effectuated a waiver of sovereign immunity.

However, in moving to dismiss the action, the defendants originally showed the absence of a written contract of employment, which was critical to Tricoli's ability to show a waiver of sovereign immunity. The trial court held a hearing on the motion on September 22, 2014. Subsequently, on October 10, 2014, Tricoli submitted

3

an August 7, 2006 letter from the Chancellor of the Board of Regents offering him the GPC presidency, which he claimed constituted a written employment contract. That letter stated:

> It is my pleasure to offer you an appointment to the presidency of Georgia Perimeter College, subject to the policy and terms of the Board of Regents and the approval of the Board of Regents of the University System of Georgia at its regular meeting on August 9, 2006. The appointment would be effective on October 1, 2006. The total annualized compensation for the position is $190,000, . . . To accept the position, please return this letter with your signature.

The defendants objected to the consideration of that letter on the grounds Tricoli had not properly notified them of the submission, and also on the grounds the letter did not constitute a valid contract of employment. On November 21, 2014, "[a]fter consideration of the evidence, counsel's argument, and applicable statutory and case law," the trial court granted the motion to dismiss.

Assuming arguendo the letter created a contract of employment under this Court's ruling in *Bd. of Regents of the Univ. System of Ga. v. Doe*, 278 Ga. App. 878, 881 (1) (630 SE2d 85) (2006), it still didn't save Tricoli's breach of contract claim. The letter, which only specifies a salary and a starting date subject to the approval and policies of the Board of Regents, hardly supports a breach of contract claim. "An

4

employment contract containing no definite term of employment is terminable at the will of either party, and will not support a cause of action against the employer for wrongful termination." *Burton v. John Thurmond Constr. Co.*, 201 Ga. App. 10 (410 SE2d 137) (1991).

Tricoli contends his alleged written contract was subject to the Board of Regent's written policies and that the relevant policy, as provided by the Board in its answer to a request for admission, supplied sufficient terms to supplement the letter and form an enforceable employment contract. The text of that policy statement relied upon by Tricoli stated as follows:

> If the Board declines to re-appoint a president, it shall notify the president, through the Chancellor, of such decision immediately following the Board's regularly scheduled April [later amended to May] meeting. A decision by the Board not to re-appoint a president is not subject to appeal.

The quoted policy does not provide a definite term for the contract, a promise of employment, a specific deadline for providing the notice, or a provision that Tricoli's employment would be automatically extended for a year or some other period in the event the Board failed to provide notice of re-appointment within a certain time. As

5

such, the policy in no way converts the August 2006 letter into an employment contract that is not terminable at will.

Further, Tricoli himself terminated any employment contract he may have had when he resigned his position as president of GPC. There was no demonstrable breach of contract by any of the defendants, and Tricoli's contention that the defendants forced him to resign asserted a tort, not a contract breach. Lastly, the Board of Regents' failure to renew Tricoli's contract or offer him a contract for a different position provided no basis for avoiding the application of sovereign immunity. See, e.g., *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422 (762 SE2d 138) (2014).

As Tricoli failed to show an enforceable employment contract, there was no waiver of sovereign immunity on the basis of a written contract.

3. All of Tricoli's tort claims were barred by the Georgia Tort Claims Act. OCGA § 50-21-25 (a) provides that the GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee . . . while acting within the scope of his or her official duties or employment. . . ." OCGA § 50-21-23 waives sovereign immunity for torts of state officers and employees, but that waiver is subject to the exceptions set forth in OCGA § 50-21-24. Virtually all of the tortious conduct Tricoli

6

complains of falls within those listed exceptions, and so his claims based on that conduct are barred.

4. Tricoli also asserted a claim under the Georgia RICO Act, OCGA § 16-14-1 et seq., based on the same conduct that predicated his tort claims. It is an imaginative theory of recovery to assert against the State itself, but that is about all it is - imagination. The Georgia RICO Act does not express any waiver of sovereign immunity. As noted above, OCGA § 50-21-25 (a) clearly states that the GTCA is the exclusive remedy for any torts committed by state officers and employees. Because the GTCA is the exclusive remedy, the Georgia RICO Act cannot be invoked as an alternate remedy or waiver of sovereign immunity for tortious conduct of state officers and employees.

*Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013), relied upon by Tricoli, does not support finding otherwise. *Colon* only involved the Georgia whistleblower statute, OCGA § 45-1-4, which more clearly contained a waiver of sovereign immunity, and did not involve any other statute that was designated as the exclusive remedy where sovereign immunity is at issue.

In conclusion, because Tricoli failed to establish a written enforceable employment contract that would avoid sovereign immunity, and because Tricoli's tort

7

claims were exclusively governed and barred by the GTCA, the trial court properly granted the defendants' motion.

*Judgment affirmed. Barnes, P. J., Ellington, P. J., Dillard, McFadden, and Branch, JJ., concur.  Miller, P. J., dissents.*

A15A2256. TRICOLI v. WATTS et al.

MILLER, Presiding Judge, dissenting.

I respectfully dissent from the majority's conclusion that the trial court properly granted the defendants' motion to dismiss because the trial court did not convert the motion to dismiss into a motion for summary judgment, and the Georgia Tort Claims Act is not the exclusive remedy where the RICO statute created a separate waiver of sovereign immunity.

1. The majority concludes that the trial court converted the motion to dismiss into a motion for summary judgment. The trial court, however, could not do so without providing Tricoli with notice. *Bonner v. Fox*, 204 Ga. App. 666, 667 (420 SE2d 1992). Instead, the trial court granted the defendant's motion to dismiss, and this Court should review the trial court's order consistent with that standard of review.[1]

2. The issue of whether the Georgia RICO statute provides a waiver of immunity is a question of statutory interpretation and a matter of first impression.

_____

[1] We review de novo a trial court's decision to grant a motion to dismiss. *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422, 423 (762 SE2d 138) (2014). In doing so, we construe the pleadings in the light most favorable to the appellant, and we resolve any doubts in the appellant's favor. *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007).

[a] statute draws it[s] meaning, of course, from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *Tibbles v. Teachers Retirement System of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015).

The RICO Act makes it unlawful for "any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." OCGA § 16-14-4 (b). The definition of "enterprise" includes *governmental* entities. OCGA § 16-14-3 (3). Moreover, the statute specifically provides that "[a]ny aggrieved person" may initiate a civil action for treble damages and/or injunctive relief. OCGA § 16-14-6 (b), (c).

Importantly, nothing requires the Legislature to "use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory

2

waiver of sovereign immunity." *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013). In drafting the RICO Act, the legislature made its intent clear:

> It is the intent of the General Assembly that [the RICO statute] apply to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury. This chapter shall be liberally construed to effectuate the remedial purposes embodied in its operative provisions.

OCGA § 16-14-2 (b).

The RICO statute includes government entities in its definition of enterprise, and it specifically provides a private individual with a civil remedy for RICO Act violations. These provisions, when viewed together, create a waiver of sovereign immunity.[2] To read the RICO Act as the trial court and the majority do would result in a violation of statutory interpretation and led to a nonsensical result. See *Colon*, supra, 294 Ga. at 96 (1).

---

[2] Moreover, in other contexts, the Georgia Supreme Court has found language similar to that found in the RICO Act sufficient to waive immunity. See *Colon*, supra, 294 Ga. App. at 95-96 (1). Specifically, in *Colon*, the Supreme Court concluded that the whistleblower statute, OCGA § 45-1-4, waived sovereign immunity with language that "[a] public employee . . . may institute a civil action[.]" As the Supreme Court explained, "in order for the statute to have any meaning at all here, it can only be interpreted as creating a waiver of sovereign immunity." (Citation omitted.) Id.

3

The majority argues that the Georgia Tort Claims Act is the *exclusive* remedy for Tricoli's claims and decides the case on this basis. See OCGA § 51-21-25 (a). I beg to differ, however, with the trial court's and majority's conclusion that Tricoli cannot overcome the bar of sovereign immunity because the language of the RICO statute itself indicates otherwise. Imaginative[3] or not, it is irrelevant whether Tricoli will prevail ultimately on the merits of his RICO allegations. The only issue before this Court now is whether he has pled claims that can overcome sovereign immunity at this stage of the litigation. Tricoli has certainly done so.

If Tricoli had alleged only isolated instances of tortious conduct, the Georgia Tort Claims Act would have barred his claims because the General Assembly, in drafting the RICO Act, did not intend to cover "*isolated* incidents of misdemeanor conduct." OCGA § 16-14-2 (b) (emphasis supplied). Unlike the Georgia Tort Claims Act, however, the RICO Act is designed to prohibit (1) a *pattern* of activity, (2) intended to threaten or cause economic harm, even where that pattern involves tortious actions. See id. This is exactly what Tricoli has alleged in his RICO claim – a *pattern* of tortious and criminal acts designed to threaten him with and inflict economic harm upon him. This Court cannot overlook a remedy the legislature, in its

---

[3] See majority op. at 7 (4).

4

wisdom, saw fit to create. Therefore, I conclude that the Georgia Tort Claims Act is not the exclusive remedy where, as in this case, the legislature intended for the RICO Act to provide a separate waiver of sovereign immunity. Accordingly, I dissent from the majority's opinion.