**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 22, 2019**

# In the Court of Appeals of Georgia

A19A2278. GEORGIA LOTTERY CORPORATION v. PATEL.

MCMILLIAN, Presiding Judge.

This case presents an issue of first impression: has the State waived its sovereign immunity in actions for injunctive relief under Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), OCGA § 10-1-370 et seq.? Because the UDTPA does not expressly or clearly waive the State's sovereign immunity, nor provide for the extent of any such waiver, we reverse the trial court's denial of Georgia Lottery Corporation's ("GLC") motion to dismiss.

This case is one of several appeals that have recently come before this Court after GLC refused to pay a $5,000,000 lottery prize allegedly won on a scratch off ticket purchased by plaintiff/appellee Sonalben Patel, which she gave to her mother,

Ramilaben Patel,[1] for her birthday.[2] In *Ga. Lottery Corp. v. Patel*, 349 Ga. App. 529 (826 SE2d 385) (2019) (physical precedent only),[3] two judges on this Court found that the scratch off ticket constituted an express written contract between Ramilaben and GLC, thereby waiving GLC's sovereign immunity on her breach of contract claim.[4] Id. at 533-34.

While that suit was pending,[5] Patel filed a separate complaint seeking injunctive relief against GLC under the UDTPA and Georgia's Fair Business Practices Act, OCGA § 10-1-390 et seq ("FBPA"). Specifically, the complaint

---

[1] Our references to "Patel" in this opinion are to appellee Sonalben Patel. When necessary for clarity, we will refer to Ramilaben and Sonalben by their first names.

[2] We state these facts only as background and make no comment on any disputes the parties may have as to the factual basis of the underlying claims.

[3] The dissent disagreed and would have instead found that the scratch off lottery ticket presented, at most, evidence of an implied contract and thus was insufficient to waive GLC's sovereign immunity under settled principles of Georgia law. *Patel*, 349 Ga. App. at 534-35.

[4] The Supreme Court denied GLC's petition for certiorari in that case on November 4, 2019, Case No. S19C1018. Additionally, in *Patel v. Ga. Lottery Corp.*, 350 Ga. App. 883 (830 SE2d 393) (2019) (physical precedent only), we reversed the trial court's denial of Ramilaben's motion for summary judgment on her claim for statutory interest and remanded that case for further proceedings on that issue.

[5] Ramilaben filed her breach of contract claim against GLC on April 20, 2017, and Sonalben Patel filed her complaint in the present case on May 29, 2018.

requested that GLC be enjoined from selling lottery tickets in Georgia until GLC "expressly and clearly warns consumers" that

  a) "The Georgia Lottery Corporation does not have the statutory authority to enter into written contracts with the consumers of tickets."

  b) "In no way does a scratch off lottery ticket sold by the Georgia Lottery Corporation satisfy the criteria for a written contract."

GLC moved to dismiss on grounds of sovereign immunity, and the trial court granted the motion on Patel's claim under the FBPA. However, the trial court denied GLC's motion to dismiss Patel's claim under the UDTPA, finding that the legislature had "effectively waived" GLC's sovereign immunity for claims under the UDTPA by including "government or government subdivision or agency" within the definition of "person" under the Act, and further provided the extent of the waiver by specifying injunctive relief as a remedy for a violation of the Act. The trial court issued a certificate of immediate review from its order, and GLC filed an application for interlocutory review, which we granted. As more fully set forth below, we now reverse.

The question presented by this appeal is a question of law and, accordingly, our review is de novo. *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast,*

3

*Inc.*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) (review of question of law in sovereign immunity case de novo); *James v. Ga. Dept. of Pub. Safety*, 337 Ga. App. 864, 865 (1) (789 SE2d 236) (2016) (same).

Our Supreme Court has previously determined that GLC is an instrumentality of the State and is, therefore, entitled to the protection of sovereign immunity. *Kyle v. Ga. Lottery Corp.*, 290 Ga. 87, 89-90 (1) (718 SE2d 801) (2011). Under Article I, Section II, Paragraph IX (e) of the Georgia Constitution, the State's sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Although no special or magic words must be used by the legislature when enacting a statutory waiver of sovereign immunity, implied waivers are not favored, and it must be clear from the statute that immunity is waived and the extent of such waiver. *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013), overruled in part on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778, n.7 (784 SE2d 775) (2016). Thus, where the plain language of a statute does not provide for a specific waiver of sovereign immunity and the extent of the waiver, the courts do not have the power to imply a waiver. *Sustainable Coast*, 294 Ga. at 603 (2). And "statutes providing for a waiver of sovereign immunity are in derogation of the common law

4

and thus are to be strictly construed against a finding of waiver." (Citation and punctuation omitted.) *Bd. of Regents of the Univ. System of Ga. v. One Sixty Over Ninety, LLC*, 351 Ga. App. 133, 138 (1) (830 SE2d 503) (2019).

We turn first to the text of the statute. As an initial matter, the UDTPA does not contain an express waiver of sovereign immunity. The words "waive" and "sovereign immunity" do not appear anywhere in the text of the statute, and the statute does not contain any other language that expressly denotes a waiver. Compare OCGA § 50-21-23 (a) (Georgia Tort Claims Act) ("The state waives its sovereign immunity . . ."). Patel asserts that by including "government, or governmental subdivision or agency," within the definition of "person" under the UDTPA, the legislature intended the State to be subject to the Act. See OCGA § 10-1-371 (5).[6] Patel then argues that OCGA § 10-1-373 (a) sets out the extent of the waiver – injunctive relief – by providing "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." OCGA § 10-1-373 (a).

---

[6] The full text of OCGA § 10-1-371 (5) reads: "'Person' means an individual, corporation, government, or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity."

The question then is whether including "government [or] governmental subdivision or agency" in the definition of "person" is clear enough to denote a waiver, whether express or implied. We have previously answered this question in the negative in the context of two other similar statutes. In *Bd. of Regents of the Univ. System of Ga. v. One Sixty Over Ninety, LLC*, this Court found that virtually identical language in the Georgia Trade Secrets Act of 1990, OCGA § 10-1-760,[7] does not, without more, effectuate a waiver of the state's sovereign immunity. 351 Ga. App. at 137-38 (1). Similarly, in *Tricoli v. Watts*, 336 Ga. App. 837, 840 (4) (783 SE2d 475) (2016), a majority of this Court found that the Georgia RICO Act, OCGA § 16-14-1 et seq., "does not express any waiver of sovereign immunity[]" simply because the phrase "governmental entities" is included in the definition of "enterprise" for claims brought under the Act.

Patel argues that these cases are distinguishable because unlike the Trade Secrets Act or Georgia RICO Act, the UDTPA does provide for more than just including the government within the definition of "person" under the Act. The

---

[7] In the Trade Secrets Act, "'Person' means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, *government, governmental subdivision or agency*, or any other for profit or not for profit legal or commercial entity." OCGA § 10-1-761 (3) (emphasis supplied).

UDTPA also expressly provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against *it*," OCGA § 10-1-373 (a), which Patel argues refers back to the definition of person. However, even assuming that "it" refers to "person," as defined in OCGA § 10-1-371 (5), that still leaves the pivotal question of whether including the government as an entity covered by the definition of "person" *and* a separate statutory provision allowing such persons to obtain an injunction (apparently against other such persons) is a clear waiver of the State's sovereign immunity. So we must once again turn to the text and structure of the UDTPA

To begin with, we note that OCGA § 10-1-371 (5) does not specifically create an injunction remedy against the State that would otherwise be barred by sovereign immunity, nor does it require that sovereign immunity be waived in order for it to have meaning. In contrast, our Supreme Court has found it to be compelling that the Whistleblower Act specifically created a cause of action against the government with potential monetary damages and emphasized that for the Whistleblower Act "to have any meaning at all here it can only be interpreted as creating a waiver of sovereign immunity." Cf. *Colon*, 294 Ga. at 96. That is not the case here. Even if the State's

sovereign immunity is not waived under the UDTPA, the State and non governmental entities can continue to assert claims for injunction against non governmental entities.

And although not cited by either party, we find it significant that the UDTPA expressly does not apply to "[c]onduct in compliance with the orders or rules of a statute administered by a federal, state, or local governmental agency." OCGA § 10-1-374 (a) (1). "GLC was created by the General Assembly in 1992 under the authority of the Georgia Lottery for Education Act, OCGA § 50-27-1 et seq., for the purpose of marketing and selling lottery tickets to benefit state educational purposes." *Kyle*, 290 Ga. at 87. Because GLC is a state agency created by statute to administer the lottery, it follows that its conduct in compliance with its own orders and rules is also exempt from the UDTPA. See *Northeast Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 34-35 (4) (676 SE2d 428) (2009) (insurance transactions exempt from UDTPA under OCGA § 10-1-374 since they are subject to a regulatory regime administered by the Insurance Department of the State of Georgia and the Office of Insurance Commissioner pursuant to statute). Thus, unlike the Whistleblower Act construed in *Colon*, implying a waiver of sovereign immunity under the UDTPA would be inconsistent with claims recognized by the Act.

In summary, because the UDTPA does not expressly waive the State's sovereign immunity, does not specifically create a cause of action against the State, and exempts conduct in compliance with a statute administered by a State agency, we find no clear waiver of sovereign immunity under the UDTPA. Accordingly, Patel's UDTPA claim for injunctive relief against GLC was barred by sovereign immunity, and the denial of GLC's motion to dismiss is reversed.[8]

*Judgment reversed. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[8] In anticipation that we might rule adversely to her on waiver, Patel makes an alternative argument, urging us to "closely review" the Supreme Court's holding in *Kyle* and "abandon" the holding in that case that GLC is an instrumentality of the State and therefore was entitled to assert the defense of sovereign immunity. 290 Ga. at 88 (1). But we have no authority to review or abandon the precedent from our Supreme Court, and we are bound by that precedent until that Court makes a different pronouncement. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court [of Georgia] shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) ("vertical stare decisis dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia[.]")