**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2015**

# In the Court of Appeals of Georgia

A14A2119. STATE OF GEORGIA, EX REL., RALPH T. HUDGENS, COMMISSIONER OF INSURANCE FOR THE STATE OF GEORGIA v. SUN STATES INSURANCE GROUP, INC.

A14A2120. REGULATORY TECHNOLOGIES, INC. v. STATE OF GEORGIA, EX REL., RALPH T. HUDGENS, COMMISSIONER OF INSURANCE FOR THE STATE OF GEORGIA.

PHIPPS, Chief Judge.

The State of Georgia, on the relation of the Commissioner of Insurance, Ralph T. Hudgens, served as liquidator of International Indemnity Company ("IIC"), an insurance company in liquidation pursuant to the Insurers Rehabilitation and Liquidation Act (the "Act"). Regulatory Technologies, Inc. ("Reg. Tech") assisted in the liquidation of the IIC estate. Sun States, Inc. (IIC's sole shareholder) sought relief from the trial court requiring the liquidator to be liable for money that Sun States

alleged was wrongfully taken out of the IIC estate, and requiring the liquidator to pay its attorney fees.

In Case No. A14A2119, the State of Georgia on the relation of the Commissioner of Insurance, Ralph T. Hudgens, as liquidator of IIC, appeals the trial court's denial of its motion to dismiss on the basis of sovereign immunity. In Case No. A14A2120, Reg Tech joins in the appeal filed by the State of Georgia. For the reasons set forth below, we affirm the judgment in part, reverse the judgment in part, and remand the case.

"We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them."[1]

Pursuant to the Act,[2] in January 2001 the Commissioner of Insurance of the State of Georgia, then John W. Oxendine,[3] was appointed by the superior court as the

---

[1] *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 193 (718 SE2d 55) (2011) (punctuation and footnote omitted).

[2] See OCGA § 33-37-1 et seq.

[3] During the pendency of this matter in the lower court, Ralph T. Hudgens became the Commissioner of Insurance for the State of Georgia (in January 2011), and by operation of law, Hudgens was substituted for Oxendine as a party to this

liquidator of IIC.[4] The liquidator then appointed a deputy liquidator (Donald Roof) and an assistant deputy liquidator (Harry Sivley) to act for him in the liquidation of the IIC estate.[5] Sivley was the co-founding principal and chief executive officer of Reg Tech, and according to Sivley, Reg Tech was an "integrated financial services company formed to assist in the supervision, conservation, rehabilitation and liquidation, of financial institutions and insurance companies." Reg Tech assisted in the liquidation of IIC.

After the liquidation of IIC was concluded, in March 2008 the State of Georgia on the relation of the liquidator (hereinafter "state/liquidator") sought an order from the trial court approving the final accounting of the assets and expenses of the liquidated estate and discharging the liquidator, deputy liquidator and assistant deputy liquidator.[6] Sun States, the sole shareholder of IIC, objected to the application for discharge, to the extent of "any other distributions to [Sivley] or [Reg Tech] or their

_____

action. See OCGA §§ 33-37-17 (a); 9-11-25 (d).

[4] See OCGA § 33-37-17 (a).

[5] See OCGA § 33-37-20 (a).

[6] See OCGA § 33-37-45 (a), pertinently providing, "When all assets justifying the expense of collection and distribution have been collected and distributed under this chapter, the liquidator shall apply to the court for discharge."

affiliates."[7] Sun States complained about, inter alia, administrative expenses[8] charged to the IIC estate, and asked the court to appoint an independent auditor to review "the change and allocation of administrative costs by Reg Tech and its affiliates and contractors to the IIC Estate."

The court appointed an auditor, and almost sixteen months later (in February 2010), the auditor submitted a report to the court.[9] The state/liquidator filed a modified accounting and application for discharge, incorporating some, but not all, of the credits (in the amount of $210,260.24) the auditor opined were due the IIC estate. In response, the trial court ordered the liquidator to provide certain explanations and additional data to the auditor, and ordered the auditor to supplement his report if he deemed it necessary based on the additional information. In February 2012, as ordered, the state/liquidator supplemented its modified accounting and application and provided additional information to the auditor, and further agreed that

---

[7] Sun States moved to intervene, but the motion was not granted or otherwise ruled on.

[8] The statutory provision for the priority of distribution of claims identifies nine classes of claims, of which the "[c]osts and expenses of administration during rehabilitation and liquidation" is the first class in the order of distribution of claims, and "shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment." OCGA § 33-37-41.

[9] See OCGA § 33-37-48.

4

additional credits should be made to the IIC estate (in the amount of $433,569.71). But the state/liquidator continued to refute allegations that the IIC estate had been charged excessive administrative expenses in the form of contract compensation, payroll, or overhead expenses for Reg Tech. The state/liquidator asserted that Reg Tech and/or Sivley had drawn funds directly from the IIC estate during the liquidation process to cover the costs of administration expenses, and that it had been done with little or no oversight from the liquidator. The auditor's supplemental report, however, continued to raise issues as to these administrative expenses (payroll expenses, overhead expenses and contractual compensation expenses).

In August 2012, a joint pretrial order was entered. Therein, Sun States stated that it sought an order "surcharging" the liquidator, deputy liquidator, assistant deputy liquidator, and Reg Tech for excessive overhead expenses, over-allocation of contractual compensation, and excessive salary and benefits to Reg Tech personnel – matters identified in the audit. Sun States also sought attorney fees. The state/liquidator then moved to join Reg Tech as an indispensable party to the litigation; the trial court granted the motion, designating Reg Tech as a "respondent to the pending objection by shareholder [Sun States] to the Liquidator's Modified Accounting." Approximately nine months later (in June 2013), the state/liquidator

moved to dismiss Sun States's claims against it, asserting that they were claims for a money judgment against the state; the state/liquidator asserted that the claims were barred by the doctrine of sovereign immunity.

The trial court ruled that the State of Georgia, through the Act, had waived sovereign immunity to the extent that the court could order the liquidator to "repay," or in other words to put back into, the liquidation estate any administrative expenses that were excessive or had been improperly removed from the IIC estate. The trial court also ruled that it had the authority to award attorney fees to Sun States (and thus, would permit evidence on the issue of attorney fees at trial).

*Case No. A14A2119*

1. The state/liquidator contends that the trial court erred by denying its motion to dismiss and in finding that sovereign immunity was waived by the Act. We agree.

"[S]overeign immunity protects from tort liability the State itself, including its agencies and instrumentalities[.]"[10] "Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity. The doctrine of sovereign immunity, also known as governmental

---

[10] *Shekhawat v. Jones*, 293 Ga. 468, 470 (1) (746 SE2d 89) (2013) (citation omitted).

6

immunity, protects all levels of governments from legal action unless they have waived their immunity from suit."[11]

> Article I, Section II, Paragraph IX (e) of the Georgia Constitution provides that "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." In this regard, implied waivers of governmental immunity should not be favored. This does not mean, however, that the Legislature must use specific "magic words" such as "sovereign immunity is hereby waived" in order to create a specific statutory waiver of sovereign immunity.[12]

A government waives sovereign immunity when an Act's language provides both that sovereign immunity is waived, and the extent of any waiver.[13]

Even assuming that the trial court was correct that the Act impliedly provided that sovereign immunity was waived by the provisions of the Act which give the supervising court "wide" powers in reviewing expenses and permit the court to audit

---

[11] *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) (punctuation and footnote omitted).

[12] *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013) (citations and punctuation omitted).

[13] See *Ga. Dept. of Corrections*, supra at 194 (1), n. 17.

7

the books of the estate in liquidation,[14] provide that the results of any such audit are to be filed with the court,[15] mandate that at the end of the liquidation the liquidator shall apply to the court for discharge,[16] and authorize the supervising court to grant the discharge and make any other orders as may be deemed appropriate,[17] the Act fails to state the extent of any waiver except where the damage, loss, injury or liability claimed was caused by the intentional or willful and wanton misconduct of the receiver or an employee of the receiver, which exception this opinion addresses in Division 2, infra.[18]

---

[14] OCGA § 33-37-48.

[15] Id.

[16] OCGA § 33-37-45 (a).

[17] Id.

[18] See OCGA § 33-37-8.1 (b), which provides:
The receiver and his or her employees shall have official immunity and shall be immune from suit and liability, both personally and in their official capacities, for any claim for damage to or loss of property, personal injury, or other civil liability caused by or resulting from any alleged act, error, or omission of the receiver or any employee arising out of or by reason of their duties or employment, provided that nothing in this provision shall be construed to hold the receiver or any employee immune from suit or liability for any damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of the

8

In this case, the trial court relied, in part, on *Colon v. Fulton County*,[19] to conclude that sovereign immunity was waived by the Act. In *Colon*, the Supreme Court of Georgia held that where, as in that case, the legislature had

> specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and ha[d] further expressly stated that an aggrieved party was entitled to collect money damages from the government in connection with a successful claim under the statute, there can be no doubt that the Legislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute.[20]

In *Colon*, the statutory provision that granted a public employee the right to bring an action against his employer for retaliation specifically provided that the waiver was limited to injunctive relief, reinstatement of the employee to employment, reinstatement of fringe benefits and seniority rights, compensation for lost wages,

---

receiver or any employee.

Pursuant to OCGA § 33-37-8.1 (a) (2), the term "employees" means "all present and former special deputies and assistant special deputies appointed by the Commissioner and all persons whom the Commissioner, special deputies, or assistant special deputies have employed to assist in a delinquency proceeding under this chapter."

[19] Supra.

[20] Id. at 95-96 (1) (citations omitted).

benefits, other remuneration, and any other compensatory damages allowable at law.[21]

In *City of Atlanta v. Barnes*,[22] upon which the Supreme Court relied in *Colon*,[23] a tax statute which provided the right to bring an action for a tax refund against a governmental body established that the extent of the waiver was the amount of the refund, and thus, sovereign immunity was waived.[24] And in *Williamson v. Dept. of Human Resources*,[25] another case upon which the Supreme Court relied in *Colon*,[26] the Fair Employment Practices Act[27] ("FEPA"), which created a right of action against the state, as an employer, for discrimination on the basis of an employee's

---

[21] Id. at 96 (1); OCGA § 45-1-4 (e).

[22] 276 Ga. 449 (578 SE2d 110) (2003), overruled on other grounds as stated in *Sawnee Electrical Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 25 (3), n. 1 (608 SE2d 611) (2005).

[23] Supra at 95 (1).

[24] *City of Atlanta*, supra at 451 (3) (pertinent tax statute provided: "Any taxpayer whose claim for refund is denied by the governing authority of the county or municipality or whose claim is not denied or approved by the governing authority within one year from the date of filing the claim shall have the right to bring an action *for a refund* in the superior court of the county in which the claim arises.").

[25] 258 Ga. App. 113 (572 SE2d 678) (2002).

[26] Supra at 95 (1).

[27] See OCGA § 45-19-20 et seq.

10

disability,[28] provided that such action could result in a judgment for, inter alia, hiring, reinstatement, or upgrading of employees with or without back pay; the extension of the full and equal enjoyment of the advantages, facilities, privileges, and services of the respondent; and restoration of employment benefits not otherwise specified in the code section.[29] The FEPA also provided that any monetary award ordered shall be for actual damages only.[30] Thus, the state by legislative act had specifically waived its sovereign immunity to the extent of the action authorized by the FEPA.[31]

In this case, none of the provisions of the Act upon which the trial court based its judgment that the state had waived sovereign immunity, either independently or collectively, provide the extent of any such waiver of sovereign immunity, i.e., any specific relief recoverable by an aggrieved party, such as the right to collect money damages from the government in connection with a successful claim under the Act.[32] Therefore, the trial court's order is reversed to the extent of its judgment: (1) that the

---

[28] OCGA §§ 45-19-21 (a) (3); 45-19-36 (b).

[29] *Williamson*, supra at 116 (1); OCGA § 45-19-38 (c).

[30] OCGA § 45-19-38 (d).

[31] *Williamson*, supra.

[32] See *Colon*, supra at 95-96 (1); *City of Atlanta*, supra; *Williamson*, supra.

11

government waived sovereign immunity pursuant to the specified provisions of the Act; (2) that those specified provisions authorized the trial court to order the liquidator to repay the liquidation estate administrative expenses that were allegedly wrongfully removed from the liquidation estate; and (3) that attorney fees may be awarded to Sun States under the specified provisions.

2. The state/liquidator contends that the trial court erred by finding that OCGA § 33-37-8.1 (b) did not apply to an application for discharge. However, the trial court made no such finding.

After concluding that the State, through the specified "statutory framework" of the Act, waived sovereign immunity, the trial court turned to a specific provision of the Act, OCGA § 33-37-8.1 (b). Without concluding that the statute was not applicable in the case, the court stated that "even if OCGA § 33-37-8.1 (b) were applicable to objections regarding a Liquidator's application for discharge, it provides no immunity 'for any damage, loss, injury, or liability caused by the intentional or willful and wanton conduct of the receiver or any employee.'"

The court concluded that (during the course of the hearing on the liquidator's request for discharge) evidence could be introduced to show that the intentional or wanton conduct of the liquidator or his deputies permitted the payment of excessive

12

or improper administrative expenses of the IIC estate. The court cited the following as a basis for its ruling: the close and longstanding relationship between the former Insurance Commissioner (who was the liquidator) and Reg Tech (whose principal was Sivley, the assistant deputy liquidator); Sivley's company, Reg Tech, had been permitted to charge millions of dollars against the IIC estate pursuant to what was "essentially" an oral business arrangement; Sivley and Reg Tech had been provided "great latitude" to charge expenses against the IIC estate with little or no contemporaneous review from the liquidator as to the propriety of the charges or their amounts; the record suggested that the books involving this liquidation were in disarray; it took a lengthy time to complete the court-ordered audit, in part, because key records were lacking; and, years after seeking a discharge, the liquidator continued to discover significant new expenses and accounting issues related to the IIC estate.

We construe the court's language concerning the applicability of OCGA § 33-37-8.1 (b) as the court reaching an alternative basis upon which to deny the state/liquidator's motion to dismiss, not as a ruling that OCGA § 33-37-8.1 (b) did not apply to this matter. The state/liquidator opposed Sun States's argument that OCGA § 33-37-8.1 did not apply. Accordingly, the trial court's ruling that it would

consider further evidence in connection with the applicability of OCGA § 33-37-8.1 (b) to this matter is affirmed, and we remand this case to the trial court for consideration of Sun States's objections related thereto and to the relief Sun States seeks in accordance with OCGA § 33-37-8.1 (b).

*Case No. A14A2120*

3. In light of the conclusions reached in Divisions 1 and 2[33] in Case No. A14A2119, we need not address Reg Tech's arguments in Case No. A14A2120; Reg Tech had joined in the appeal filed by the State of Georgia. The judgment of the trial court is affirmed in part, reversed in part, and the case is remanded as set forth in Case No. A14A2119.

*Judgment in Case No. A14A2119 affirmed in part and reversed in part, and case remanded. Ellington, P.J., concurs. McMillian, J., concurs in Division 1 and concurs in judgment only as to Division 2.*

*Judgment in Case No. A14A2120 affirmed in part and reversed in part, and case remanded. Ellington, P.J., and McMillian, J., concur.*

---

[33] Supra.

14