**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1195. STATE OF GEORGIA et al. v. INTERNATIONAL INDEMNITY COMPANY et al.

A17A1196. REGULATORY TECHNOLOGIES, INC. v. STATE OF GEORGIA.

MCFADDEN, Presiding Judge.

This is the second appearance of these related cases in this court. The appeals arise from a trial court order finding, among other things, that the state had waived sovereign immunity under certain provisions of the Insurers Rehabilitation and Liquidation Act, OCGA §§ 33-37-1 et seq. (the "Act"). In the first appeal, we held, in part, that the trial court had erred in finding a waiver of sovereign immunity under that act. *State of Ga. v. Sun States Ins. Group*, 332 Ga. App. 197, 199-202 (1) (770 SE2d 43) (2015). The Georgia Supreme Court vacated that opinion on jurisdictional grounds, finding that the appellants had failed to comply with the interlocutory appeal

procedures. *State of Ga. v. Sun States Ins. Group*, 299 Ga. 489 (788 SE2d 346) (2016). On remand, the trial court vacated its prior order, re-entered the same order, and issued a certificate of immediate review. We granted applications for interlocutory review, and these appeals followed. As in our first decision, we again hold that the trial court erred in finding a waiver of sovereign immunity.

1. *Facts and procedural posture.*

This court's opinion in the first appeal set forth the following statement of facts and procedural posture.

> Pursuant to the Act, in January 2001 the Commissioner of Insurance of the State of Georgia, then John W. Oxendine, was appointed by the superior court as the liquidator of [International Indemnity Company ("IIC")]. The liquidator then appointed a deputy liquidator (Donald Roof) and an assistant deputy liquidator (Harry Sivley) to act for him in the liquidation of the IIC estate. Sivley was the co-founding principal and chief executive officer of [Regulatory Technologies, Inc. ("Reg Tech")], . . . [which] assisted in the liquidation of IIC.
>
> After the liquidation of IIC was concluded, in March 2008 the State of Georgia on the relation of the liquidator (hereinafter "state/liquidator") sought an order from the trial court approving the final accounting of the assets and expenses of the liquidated estate and discharging the liquidator, deputy liquidator and assistant deputy liquidator. Sun States [Insurance Group, Inc.], the sole shareholder of IIC, objected to the application for discharge, to the extent of any other distributions to Sivley or Reg Tech or their affiliates. Sun States complained about, inter alia, administrative expenses charged to the IIC estate, and asked the court to appoint an independent auditor to review

2

the change and allocation of administrative costs by Reg Tech and its affiliates and contractors to the IIC Estate.

The court appointed an auditor, and almost sixteen months later (in February 2010), the auditor submitted a report to the court. The state/liquidator filed a modified accounting and application for discharge, incorporating some, but not all, of the credits (in the amount of $210,260.24) [which] the auditor opined were due the IIC estate. In response, the trial court ordered the liquidator to provide certain explanations and additional data to the auditor, and ordered the auditor to supplement his report if he deemed it necessary based on the additional information. In February 2012, as ordered, the state/liquidator supplemented its modified accounting and application and provided additional information to the auditor, and further agreed that additional credits should be made to the IIC estate (in the amount of $433,569.71). But the state/liquidator continued to refute allegations that the IIC estate had been charged excessive administrative expenses in the form of contract compensation, payroll, or overhead expenses for Reg Tech. The state/liquidator asserted that Reg Tech and/or Sivley had drawn funds directly from the IIC estate during the liquidation process to cover the costs of administration expenses, and that it had been done with little or no oversight from the liquidator. The auditor's supplemental report, however, continued to raise issues as to these administrative expenses (payroll expenses, overhead expenses and contractual compensation expenses).

In August 2012, a joint pretrial order was entered. Therein, Sun States stated that it sought an order surcharging the liquidator, deputy liquidator, assistant deputy liquidator, and Reg Tech for excessive overhead expenses, over-allocation of contractual compensation, and excessive salary and benefits to Reg Tech personnel – matters identified in the audit. Sun States also sought attorney fees. The state/liquidator then moved to join Reg Tech as an indispensable party to the litigation; the trial court granted the motion, designating Reg Tech as a respondent to the pending objection by shareholder Sun States to the Liquidator's Modified Accounting. Approximately nine months later (in June 2013), the state/liquidator moved to dismiss Sun States's claims against it,

asserting that they were claims for a money judgment against the state [that] were barred by the doctrine of sovereign immunity.

The trial court ruled that the State of Georgia, through the Act, had waived sovereign immunity to the extent that the court could order the liquidator to repay, or in other words to put back into, the liquidation estate any administrative expenses that were excessive or had been improperly removed from the IIC estate. The trial court also ruled that it had the authority to award attorney fees to Sun States (and thus, would permit evidence on the issue of attorney fees at trial).

*State of Ga.*, 332 Ga. App. at 197-199 (punctuation and footnotes omitted).

The State of Georgia[1] and Reg Tech filed direct appeals from the trial court's denial of the state's motion to dismiss on the basis of sovereign immunity, and this court affirmed in part and reversed in part the judgment of the trial court. See State of Ga., 332 Ga. App. at 197. However, on certiorari review, the Supreme Court of Georgia found that direct appeals from the denial of a motion to dismiss based on governmental immunity were not permitted and that we therefore should have dismissed the direct appeals before us for failure of the appellants' to follow the interlocutory appeal procedures. *State of Ga.*, 299 Ga. at 490.

On remand to the trial court, the state moved the trial court to vacate its original order denying the motion to dismiss, and then to reinstate the same order and issue

---

[1] As noted in our earlier opinion, during the pendency of this case, Ralph T. Hudgens became the State Insurance Commissioner and was substituted for Oxendine as a party to the action.

a certificate of immediate review. Reg Tech joined in the state's motion. The trial court granted the motion and vacated the earlier order, reinstated it, and granted a certificate of immediate review. After this court granted applications for interlocutory review, these appeals followed. The state appeals in Case No. A17A1195 and Reg Tech appeals in Case No. A17A1196.

<em>Case No. A17A1195</em>

2. *Sovereign immunity.*

The state asserts that the trial court erred in finding a waiver of sovereign immunity under the Act as to claims for payment of administrative expenses and attorney fees. We agree.

"The constitutional doctrine of sovereign immunity bars any suit against the [s]tate to which it has not given its consent, including suits against state departments, agencies, and officers in their official capacities[.]" *Lathrop v. Deal*, 301 Ga. 408, 444 (IV) (801 SE2d 867) (2017). Article I, Section II, Paragraph IX (e) of the Georgia Constitution of 1983 provides that "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." See *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476)

5

(1994) (sovereign immunity is waived by a "legislative act which *specifically* provides that sovereign immunity is waived and the extent of such waiver") (emphasis supplied). "In this regard, implied waivers of governmental immunity should not be favored." *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 (674 SE2d 894) (2009) (citations and punctuation omitted). But "this does not mean that the [l]egislature must use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity." *Georgia Dept. of Corrections v. Couch*, 295 Ga. 469, 473-474 (2) (759 SE2d 804) (2014) (citation and punctuation omitted).

> Indeed, where . . . the [l]egislature has specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and has further expressly stated that an aggrieved party is entitled to collect money damages from the government in connection with a successful claim under the statute, there can be no doubt that the [l]egislature intended for sovereign immunity to be waived with respect to the specific claim authorized under the statute.

*Colon v. Fulton County*, 294 Ga. 93, 95 (751 SE2d 307) (2013) (citations omitted), overruled on other grounds in *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016). Accord *Williamson v. Dept. of Human Resources*, 258 Ga. App. 113, 115 (1) (572 SE2d 678) (2002) ("Where a legislative act creates a right of action against the state which can result in a money judgment against the state treasury, and the state

6

otherwise would have enjoyed sovereign immunity from the cause of action, the legislative act must be considered a waiver of the state's sovereign immunity to the extent of the right of action[.]") (emphasis omitted).

In the instant case, the plain language of the Act does not specifically provide that the sovereign immunity of the state is waived or the extent of any such waiver. See OCGA §§ 33-37-1 et seq. However, the trial court found an implied waiver of the state's sovereign immunity under the Act that could require the state to pay administrative expenses and attorney fees. The provisions on which the trial court relied are set out in the margins. The court noted that OCGA §§ 33-37-20 (a) (4)[2] and

---

[2] OCGA § 33-37-20 (a) (4) provides that the liquidator shall have the power "[t]o fix the reasonable compensation of employees and agents, actuaries, accountants, appraisers, and consultants with the approval of the court[.]"

(5),[3] and 33-37-41 (1) (A)[4] use the terms "necessary," "reasonable," and "actual"

when describing the state/liquidator's administrative expenses; that OCGA § 33-37-

48[5] permits the court to audit the books of an estate in liquidation; and that under

[3] OCGA § 33-37-20 (a) (5) provides that the liquidator shall have the power "[t]o pay reasonable compensation to persons appointed and to defray from the funds or assets of the insurer all expenses of taking possession of, conserving, conducting, liquidating, disposing of, or otherwise dealing with the business and property of the insurer. In the event that the property of the insurer does not contain sufficient cash or liquid assets to defray the costs incurred, the Commissioner may advance the costs so incurred out of any appropriation for the maintenance of the Insurance Department. Any amounts so advanced for expenses of administration shall be repaid to the Commissioner for the use of the Insurance Department out of the first available moneys of the insurer[.]"

[4] OCGA § 33-37-41 provides in part: "For all pending and future claims in insolvencies existing on July 1, 1997, and for all claims in future insolvencies, the priority of distribution of claims from the insurer's estate shall be in accordance with the order as set forth in this Code section. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. No subclasses shall be established within any class. The order of distribution of claims shall be: (1) *Class 1*. The costs and expenses of administration during rehabilitation and liquidation, including, but not limited to, the following: (A) The actual and necessary costs of preserving or recovering the assets of the insurer[.]"

[5] OCGA § 33-37-48 provides: "The superior court may, as it deems desirable, cause audits to be made of the books of the Commissioner relating to any receivership established under this chapter, and a report of each audit shall be filed with the Commissioner and with the court. The books, records, and other documents of the receivership shall be made available to the auditor at any time without notice. The expense of each audit shall be considered a cost of administration of the receivership."

OCGA § 33-37-45 (a),[6] the liquidator shall apply to the court for discharge and the court may grant the discharge and make other orders. Based on those code sections, the trial court concluded that the state has waived sovereign immunity under the Act.

But contrary to the trial court's ruling, there is nothing in those code sections that "specifically created a right of action against the government that would otherwise be barred by sovereign immunity, and [that] expressly stated that an aggrieved party is entitled to collect money damages from the government in connection with a successful claim under the statute[.]" *Colon*, 294 Ga. at 95-96 (1). Thus, the trial court erred in finding an implied waiver of sovereign immunity. Moreover, as we found in our prior decision on this issue, even assuming that the trial court was correct in finding an implied waiver under the code sections upon which it relied, "the Act fails to state the *extent* of any [such] waiver[.]" *State of Ga.*, 332 Ga. App. at 200 (1) (emphasis supplied).[7] Because the plain language of the Act does

_____

[6] OCGA § 33-37-45 (a) provides: "When all assets justifying the expense of collection and distribution have been collected and distributed under this chapter, the liquidator shall apply to the court for discharge. The court may grant the discharge and make any other orders, including an order to transfer any remaining funds that are uneconomic to distribute as may be deemed appropriate."

[7] We realize that our earlier vacated decision has no binding precedential value, but we find its reasoning on this issue persuasive.

not provide for a specific waiver of governmental immunity nor the extent of such a waiver, and no waiver can be implied, we conclude "that the General Assembly did not intend to waive sovereign immunity." *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) (citation omitted). Accordingly, the trial court's order is reversed to the extent it found that the government has waived sovereign immunity pursuant to the specified provisions of the Act and that the state/liquidator could be held liable for claims seeking payment of administrative expenses and attorney fees under the Act.

2. *OCGA § 33-37-8.1.*

The state contends that the trial court erred in finding that the statute granting the receiver and his employees official immunity, OCGA § 33-37-8.1 (b),[8] did not apply to its application for discharge. The state raised this same issue in the earlier appeal, and as we found in that opinion, the trial court made no such finding. Once

---

[8] OCGA § 33-37-8.1 (b) provides: "The receiver and his or her employees shall have official immunity and shall be immune from suit and liability, both personally and in their official capacities, for any claim for damage to or loss of property, personal injury, or other civil liability caused by or resulting from any alleged act, error, or omission of the receiver or any employee arising out of or by reason of their duties or employment, provided that nothing in this provision shall be construed to hold the receiver or any employee immune from suit or liability for any damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of the receiver or any employee."

10

again, while we recognize that our earlier vacated opinion has no precedential value, we find its rationale on this issue persuasive and hereby adopt it.

> Without concluding that the statute was not applicable in the case, the [trial] court [correctly] stated that even if OCGA § 33-37-8.1 (b) were applicable to objections regarding a [l]iquidator's application for discharge, it provides no immunity for any damage, loss, injury, or liability caused by the intentional or willful and wanton conduct of the receiver or any employee. The court concluded that during the course of the hearing on the liquidator's request for discharge[,] evidence could be introduced to show that the intentional or wanton conduct of the liquidator or his deputies permitted the payment of excessive or improper administrative expenses of the IIC estate. . . . We construe the court's language concerning the applicability of OCGA § 33-37-8.1 (b) as the court reaching an alternative basis upon which to deny the state/liquidator's motion to dismiss, not as a ruling that OCGA § 33-37-8.1 (b) did not apply to this matter. . . . Accordingly, the trial court's ruling that it would consider further evidence in connection with the applicability of OCGA § 33-37-8.1 (b) to this matter is affirmed, and we remand this case to the trial court for consideration of Sun States'[] objections related thereto and to the relief Sun States seeks in accordance with OCGA § 33-37-8.1 (b).

*State of Ga.*, 332 Ga. App. at 202-203 (2) (punctuation omitted).

*Case No. A17A1196*

3. *Joinder in state's claims.*

Reg Tech states that it joins in the appeal of the state and raises the same issues, arguing that the trial court erred in finding a waiver of sovereign immunity and in finding that the official immunity of OCGA § 33-37-8.1 (b) does not apply to

11

this case. As we have addressed those arguments above in Case No. A17A1195, we need not address them again in this case. In addition, citing OCGA § 33-37.8.1, Reg Tech argues that it had the same official immunity as the assistant deputy liquidator. As discussed above, the case has been remanded with direction that the trial court consider the claims of relief in accord with that code section. Accordingly, the judgment of the trial court in Case No. A17A1196 is affirmed in part, reversed in part, and remanded as set forth in Case No. A17A1195.

*Judgments affirmed in part and reversed in part, and cases remanded. Branch and Bethel, JJ., concur.*