In the Supreme Court of Georgia

Decided:   February 4, 2019

S18G0493.  STATE OF GEORGIA et al. v. INTERNATIONAL
INDEMNITY CO. et al.
S18G0499.  REGULATORY TECHNOLOGIES, INC. v. STATE OF
GEORGIA et al.

NAHMIAS, Presiding Justice.

We granted writs of certiorari in these cases involving the liquidation of an insurance company to review the Court of Appeals' decision in State of Georgia v. International Indemnity Company, 343 Ga. App. 647 (809 SE2d 64) (2017) (Intl. Indem. Co.).  The dispositive issue presented is whether the official immunity provision in OCGA § 33-37-8.1 applies to claims for a "surcharge" and attorney fees against the State Insurance Commissioner and two other state employees, all in their official capacities as the liquidator and his deputies, and against a private company involved in the liquidation.  As explained below, because the Court of Appeals incorrectly concluded that § 33-37-8.1 may be applicable to these parties, we reverse the part of the Court of Appeals' judgment allowing the claims to proceed against the state officer and employees

in their official capacities, but we affirm the part of the judgment allowing the case to proceed against the private company.

1. The liquidation proceeding underlying these cases began nearly two decades ago.[1] In January 2001, the Commissioner of Insurance of the State of Georgia, who was then John W. Oxendine, was appointed by the trial court to act as the liquidator of International Indemnity Company, following the procedures set forth in the Insurers Rehabilitation and Liquidation Act, OCGA § 33-37-1 et seq. (Liquidation Act).[2] The liquidator appointed a deputy and an assistant deputy liquidator, Donald Roof and Harry Sivley, and Regulatory Technologies, Inc. (Reg Tech) was retained to assist in the liquidation. In March 2008, the State ex rel. (on the relation of) the Insurance Commissioner applied for an order from the trial court approving the final accounting of the liquidation estate and discharging the liquidator. Sun States Insurance Group, Inc., the sole shareholder of International Indemnity, objected to the application

---

[1] Additional details about these cases can be found in the Court of Appeals' opinion. See Intl. Indem. Co., 343 Ga. App. at 648-650.

[2] On January 10, 2011, Ralph T. Hudgens became Insurance Commissioner, and he was automatically substituted for Oxendine as a party in this action in his official capacity. See OCGA § 9-11-25 (d) (1). On January 14, 2019, Jim Beck replaced Hudgens as Insurance Commissioner, so Beck has now been automatically substituted as a party.

2

for discharge, contending that the estate was owed more money and asking the court to appoint an independent auditor to review the allocation of administrative costs by Reg Tech and its affiliates and contractors. An auditor was appointed and ultimately reported that hundreds of thousands of dollars were owed to the International Indemnity estate.

In August 2012, a joint pretrial order was entered in which Sun States said that it sought an order "surcharging" the liquidator, deputy liquidator, assistant deputy liquidator, and Reg Tech for charging the estate excessive expenses, along with attorney fees. The State moved to join Reg Tech as an indispensable party to the litigation, and the trial court granted the motion, designating Reg Tech as a respondent to Sun States' pending objection to discharge. The State then moved to dismiss Sun States' claims against it, asserting that they were claims for a money judgment against the State (the liquidator, deputy liquidator, and assistant deputy liquidator) that were barred by sovereign immunity and by official immunity under both the Liquidation Act, see OCGA § 33-37-8.1 (b), and the Georgia Tort Claims Act, see OCGA § 50-21-20 et seq.[3] Reg Tech

---

[3] OCGA § 33-37-8.1 (b) says:

The receiver and his or her employees shall have official immunity and shall be

joined in the motion, arguing in part that because Reg Tech worked under the direction of the State, it is entitled to the same statutory immunities as the liquidator.[4]

In October 2013, the trial court ruled that the State had waived sovereign immunity through the Liquidation Act to the extent that the court could order the liquidator to repay to the liquidation estate any administrative expenses that were excessive or had been improperly removed and could order the liquidator to pay attorney fees. The court explained that although the term "surcharge" is not found in the Liquidation Act, it "is a concept found in fiduciary law" that imposes liability on a fiduciary for willful or negligent misconduct in the administration of his duties. The trial court also ruled that the official immunity

---

immune from suit and liability, both personally and in their official capacities, for any claim for damage to or loss of property, personal injury, or other civil liability caused by or resulting from any alleged act, error, or omission of the receiver or any employee arising out of or by reason of their duties or employment, provided that nothing in this provision shall be construed to hold the receiver or any employee immune from suit or liability for any damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of the receiver or any employee.

"Receiver" is defined by the Liquidation Act to include, in this context, a "liquidator." OCGA § 33-37-3 (14).

[4] Reg Tech also argued that Sun States had no right under the Liquidation Act to request a surcharge and that because Reg Tech was added as an "indispensable party," if the claims against the liquidator were dismissed, there could be no claims against Reg Tech. The trial court did not address these arguments; neither did the Court of Appeals; neither do we.

4

granted by OCGA § 33-37-8.1 (b) to "the receiver and his or her employees" might not apply to court-imposed surcharges, but even if it does, Sun States could introduce evidence showing "intentional or willful and wanton misconduct," which would eliminate any official immunity under § 33-37-8.1 (b).

The State and Reg Tech immediately appealed from the trial court's denial of their motion to dismiss, and the Court of Appeals affirmed in part and reversed in part. See State of Ga. v. Sun States Ins. Group, Inc., 332 Ga. App. 197 (770 SE2d 43) (2015) (Sun States I). All three parties then petitioned for certiorari, and this Court granted all three petitions. Rather than addressing the merits of the sovereign and official immunity arguments, however, we vacated the Court of Appeals' opinion, holding that because the denial of a motion to dismiss based on governmental immunity was not a final judgment or otherwise immediately appealable under OCGA § 5-6-34 (a), the Court of Appeals should have dismissed the appeals due to the appellants' failure to follow the interlocutory appeal procedures in § 5-6-34 (b). See State of Ga. v. Sun States Ins. Group, Inc., 299 Ga. 489, 489-490 (788 SE2d 346) (2016).

After the cases were returned to the trial court, the court vacated its

original order denying the motion to dismiss, reentered a similar order with an additional footnote expressly declining to reconsider its sovereign immunity holding in light of the (vacated) Court of Appeals' opinion, and issued a certificate of immediate review. The Court of Appeals then granted the State's and Reg Tech's applications for interlocutory appeal.

In Division 2 of its opinion on the appeals now properly before it, the Court of Appeals reversed the trial court's holding that the Liquidation Act waived sovereign immunity. See Intl. Indem. Co., 343 Ga. App. at 650-653. The Court of Appeals explained that the language of the Act neither provides for a specific waiver of sovereign immunity nor describes the extent of such a waiver, nor could a waiver be implied from the provisions in the Act that the trial court had cited. See id. at 652-653.[5]

In Division 3, the Court of Appeals affirmed the trial court's holding that even if OCGA § 33-37-8.1 (b) granted official immunity to the liquidator and his deputies, "'evidence could be introduced to show that intentional or willful

---

[5] Specifically, the Court of Appeals considered OCGA §§ 33-37-20 (a) (4) and (5) and 33-37-41 (1) (A), which describe the liquidator's administrative expenses as "reasonable," "necessary," and "actual"; § 33-37-48, which allows the trial court to audit the books of an estate; and § 33-37-45 (a), which says that the trial court "may grant [a] discharge and make any other orders[.]"

6

or wanton conduct of the liquidator or his deputies permitted the payment of excessive or improper administrative expenses of the [International Indemnity] estate.'" Intl. Indem. Co., 343 Ga. App. at 653 (quoting Sun States I, 332 Ga App. at 203). The Court of Appeals therefore affirmed the trial court's ruling that it would "'consider further evidence in connection with the applicability of OCGA § 33-37-8.1 (b) to this matter,'" and remanded the State's case to the trial court "'for consideration of Sun States' objections related [to the discharge] and . . . the relief Sun States seeks in accordance with OCGA § 33-37-8.1 (b).'" Intl. Indem. Co., 343 Ga. App. at 654 (quoting Sun States I, 332 Ga. App. at 203).

Finally, in Division 4, the Court of Appeals dispensed with Reg Tech's arguments as follows:

> Reg Tech states that it joins in the appeal of the state and raises the same issues, arguing that the trial court erred in finding a waiver of sovereign immunity and in finding that the official immunity of OCGA § 33-37-8.1 (b) does not apply to this case. As we have addressed those arguments above in [the State's appeal], we need not address them again in this case.

Id. The Court of Appeals thus affirmed in part and reversed in part the trial court's order as to Reg Tech as well as the State, and remanded the cases for further proceedings.

7

The State and Reg Tech each petitioned for certiorari, arguing that while the Court of Appeals correctly held that sovereign immunity was not waived by the Liquidation Act, the court erred in remanding for consideration of their misconduct under OCGA § 33-37-8.1 (b) rather than concluding that sovereign immunity bars all of Sun States' claims. We granted both petitions.

2. We begin by noting that sovereign immunity is no longer at issue in these cases as they come to this Court. The Court of Appeals held that the Liquidation Act does not waive sovereign immunity, and Sun States did not file a petition for certiorari to challenge that holding.[6] The only question properly

_____

[6] In its briefs here, Sun States does not argue that the Court of Appeals erred in holding that the Liquidation Act does not waive sovereign immunity. Sun States does argue that a claim for "surcharge" simply does not implicate sovereign immunity because surcharge is a special kind of claim. This argument overlaps substantially with Sun States' contention in the trial court and Court of Appeals that sovereign immunity is waived by the Liquidation Act because the Act gives the trial court supervisory powers over a liquidation. That contention was expressly rejected by the Court of Appeals, and Sun States did not seek our review of that holding. To the extent the argument differs from Sun States' waiver argument, it was not addressed by the trial court, which simply found a statutory waiver of sovereign immunity, or by the Court of Appeals, which reversed only that ruling, and we will not address the argument for the first time here. We note that to the extent the surcharge claim seeks the payment or return of money from the State (including the liquidator and his deputies in their official capacities), the claim appears fundamentally to be one for money against the State. See Lathrop v. Deal, 301 Ga. 408, 412-413 (801 SE2d 867) (2017) (explaining that one of the types of claims to which sovereign immunity applies is an action for money damages against the State). We also note that to the extent Sun States' surcharge claim is properly treated (or refiled) as a tort claim, the State contends that the Georgia Tort Claims Act would apply to that claim. See OCGA § 50-21-23 (waiving sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties or employment"); § 50-21-25 (granting state employees official immunity for such torts). However, whether and how the GTCA would apply also was not addressed by the trial court or the Court of Appeals and was not fully briefed here by

8

before us is whether the Court of Appeals was correct in concluding that the trial court should further consider the application of *official* immunity under OCGA § 33-37-8.1 (b) (which is quoted above in footnote 3). Subsection (a) of § 33-37-8.1 says:

> For the purposes of this Code section, the persons entitled to protection under this Code section are:
>
> (1) All receivers responsible for the conduct of a delinquency proceeding under this chapter, including present and former receivers; and
>
> (2) Their employees, meaning all present and former special deputies and assistant special deputies appointed by the Commissioner and all persons whom the Commissioner, special deputies, or assistant special deputies have employed to assist in a delinquency proceeding under this chapter. Attorneys, accountants, auditors, and other professional persons or firms who are retained by the receiver as independent contractors and their employees shall not be considered employees of the receiver for purposes of this Code section.

Because Sun States' claims are against the liquidator (receiver) and his deputies only in their official capacities, and because Reg Tech is not entitled to any protection under OCGA § 33-37-8.1, this official immunity provision actually has no application in these cases.

_____

the parties, and there is no need for this Court to decide these issues at this time.

9

(a)     Sovereign immunity and official immunity are distinct doctrines.   The terminology may be confusing, but it is well-settled that *sovereign* immunity shields from suit the State and its departments and agencies, including claims against the State's officers or employees in their *official* capacity, while *official* immunity "offers public officers and employees limited protection from suit in their *personal* capacity."  Cameron v. Lang, 274 Ga. 122, 123, 126 (549 SE2d 341) (2001) (emphasis added).  See also Lathrop v. Deal, 301 Ga. 408, 425 (801 SE2d 867) (2017) ("[A]s our precedents make clear, a suit against a state officer in his official capacity amounts to a suit against the State itself, and the doctrine of sovereign immunity bars suits against the State to which the State has not consented." (citation omitted)).[7]

Sun States now asserts that it brought its surcharge claim against the Insurance Commissioner and his deputies in their personal capacities, thereby invoking the official immunity provision in OCGA § 33-37-8.1 (b) along with its exception for "liability caused by the intentional or willful and wanton misconduct of the receiver or any employee."  But Sun States has not pointed

[7] The Georgia Constitution addresses sovereign immunity in subparagraphs (a), (b), (c), (e), and (f) of Article I, Section II, Paragraph IX, while official immunity is addressed in subparagraph (d).

to any filings it made in the trial court or anything else in the record to support this assertion.

To the contrary, in the filing that initiated Sun States' surcharge (and related attorney fees) claims, Sun States requested an order surcharging "the Liquidator, Deputy Liquidator, Assistant Deputy Liquidator and Reg Tech"; not a single individual was identified by name, much less purported to be included in his personal capacity.[8] Notably, as discussed in footnote 2 above, the name of the person serving as Insurance Commissioner has been automatically substituted in his *official* capacity under OCGA § 9-11-25 (d) (1) twice during the pendency of these cases. Sun States made no attempt to keep Commissioner Oxendine personally in the case or to add either Commissioner Hudgens or Commissioner Beck in his personal capacity. Because § 33-37-8.1 (b)'s official immunity provision does not apply to state officers or employees sued in their official capacities – that is, to the State – the Court of Appeals erred in remanding Case No. S18G0493 for the trial court to consider evidence of

---

[8] Even in its first objection to discharge, Sun States did not identify the liquidator or deputy liquidator by name, only by official position. Although Sun States included Sivley by name (and position) in that filing, it did not request any money from Sivley; it asked only that International Indemnity's assets be distributed to "persons and entities not affiliated with Sively or Reg Tech," and that the court permit Sun States to "commission an audit of Sivley's and Reg Tech's records."

11

intentional or willful and wanton misconduct by the liquidator and his deputies rather than simply holding that official immunity is irrelevant.

(b) OCGA § 33-37-8.1 (b)'s official immunity provision also has no application to Sun States' claims against Reg Tech, because Reg Tech is plainly not covered by that provision. OCGA § 33-37-8.1 (a) (2) says that the official immunity provided by this Code section does not protect "professional persons or firms who are retained by the receiver as independent contractors and their employees." It is undisputed that Reg Tech is a private corporation that was retained as a contractor to assist with International Indemnity's liquidation. Thus, Reg Tech is not entitled to any immunity afforded by § 33-37-8.1 (b), even if Reg Tech has not engaged in any misconduct. The Court of Appeals' judgment in Case No. S18G0499 is therefore affirmed to the extent that it affirmed the trial court's refusal to dismiss the claims against Reg Tech, but the judgment is reversed to the extent that it limited the trial court on remand to considering evidence of intentional or willful and wanton misconduct.[9]

---

[9] The Court of Appeals' holding as to Reg Tech's claims for immunity was not entirely clear. As noted above, the court said only that it had addressed the issues of sovereign immunity and official immunity in ruling on the State's appeal and "need not address them again" as to Reg Tech. Intl. Indem. Co., 343 Ga. App. at 654. The court did not address the preliminary question of whether either sovereign or official immunity applied to Reg Tech. The court indicated that it was remanding

Judgments affirmed in part and reversed in part.  Melton, C.J., Benham,

Blackwell, JJ., and Judge J. Ronald Mullins concur.  Boggs, Warren, Bethel, and

Ellington, JJ. disqualified.  Peterson, J. not participating.

---

Sun States' claims against Reg Tech for the same consideration the trial court was to give to the claims against the State, apparently referring to deciding whether there is evidence of misconduct that would eliminate the protection afforded by § 33-37-8.1 (b).  See Intl. Indem. Co., 343 Ga. App. at 654.  Although the question of sovereign immunity's applicability to Reg Tech is not before this Court because Sun States did not file a petition for certiorari to challenge the Court of Appeals' sovereign immunity holding, we note that it does not appear that the Court of Appeals held that sovereign immunity protects Reg Tech (which obviously is not a state agency or department), because on that issue the Court of Appeals reversed the trial court "to the extent it found that the government has waived sovereign immunity . . . and that the *state/liquidator* could be held liable." Id. at 653 (emphasis added).

At oral argument, counsel for Reg Tech indicated that the company is no longer in business and may be insolvent.  But there is no evidence in the record before us regarding those matters; if true, we leave their implications to be addressed by the trial court on remand.  The liquidator also apparently has a claim against Reg Tech to credit or reimburse any excessive or improper administrative expenses.  We similarly do not address that claim to the extent it may differ from Sun States' claims against Reg Tech.

13